## UNITED STATES

v.

**Airman First Class Joseph W. BAKER, FR 258–17–7243 United States Air Force.**

### ACM 23399.

U. S. Air Force Court of Military Review.

Sentence Adjudged 6 Nov. 1981.

Decided 17 Aug. 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Richard A. Morgan.

Appellate Counsel for the United States: Colonel James P. Porter and Major Michael J. Hoover.

Before KASTL, HEMINGWAY and RAICHLE, Appellate Military Judges.

## DECISION

RAICHLE, Judge:

Contrary to his pleas, the accused was convicted by general court-martial, military judge alone, of three marijuana transfers, possession of marijuana, and transfer of lysergic acid diethylamide (LSD), violations of Articles 134 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 892, respectively. The approved sentence is a bad conduct discharge, confinement at hard labor for two years, forfeiture of $367.00 per month for two years and reduction to airman basic.

In the first of two assigned errors, appellate defense counsel claim that the military

judge erred in denying the defense motion to suppress evidence turned over to the Office of Special Investigations (OSI) by an informant and evidence seized during a search of the accused's off-base apartment.

On 23 April 1981, the accused had made arrangements with Sergeant Becker, an informant for the OSI, to transfer a quantity of marijuana to Becker at the accused's apartment which was located in an apartment complex off base. Becker notified the OSI of these arrangements and they, in turn, notified local police officials. After being searched and given $500.00 in marked currency, Becker was driven to the accused's apartment complex accompanied by three OSI agents, two sheriff's deputies, and two security policemen.

The apartment complex had a security system which required that anyone seeking entry call one of the tenants from the front door, identify himself, and have the locking mechanism on the front door released by the tenant. Once inside the complex, a caller could then proceed to the appropriate apartment and request entry into the apartment.

Becker rang the apartment of the accused from the front door and the accused released the locking mechanism. Becker then blocked the locking mechanism with a roll of tape so the police could enter the complex. He then proceeded to the accused's apartment and was admitted. The police followed and remained in the hallway outside the accused's apartment door where they smelled the odor of burning marijuana, overheard the accused and Becker discussing drug transactions, and heard money being counted out. They also heard the telephone ring and the accused subsequently question Becker about his involvement in a previous on-base arrest. They heard Becker deny involvement in the arrest, more talk of marijuana and, again, money being counted. Upon completion of the drug transaction, Becker left the apartment with a brown paper bag containing marijuana, the subject of one of the transfer offenses, which he turned over to the OSI. The civilian police arrested him and the accused, searched the apartment, and seized additional marijuana, the subject of the possession offense.

Two months prior to his arrest, the accused had been involved in three other controlled drug transactions with Becker. However, at the time of the arrest of the accused at his apartment, the civilian police had neither an arrest warrant nor a search warrant.

■ The military judge denied the defense motion to suppress the marijuana Becker turned over to the OSI because the accused had relinquished any expectation of privacy which he may have had over it. We agree. *United States v. Miller,* 13 M.J. 75 (C.M.A. 1982); *United States v. Sanford,* 12 M.J. 170 (C.M.A. 1981). We further note that the accused voluntarily transferred the marijuana to Becker, who then turned it over to the OSI. Accordingly, it was not obtained by a search or seizure within the meaning of the Fourth Amendment, and was properly before the court.

With regard to the evidence seized in the accused's apartment, the defense concedes that the search and seizure of this evidence was proper if the entry by the police was lawful. They contend, however, that the hallway was not a place the police were entitled to be and that the warrantless entry into the apartment was unlawful.

■ As to the lawfulness of the presence of the police in the hallway of a multiple unit dwelling with controlled access, the courts are split. *See generally, United States v. Eisler,* 567 F.2d 814 (8th Cir. 1977); *United States v. Fluker,* 543 F.2d 709 (9th Cir. 1976); *United States v. Bedford,* 519 F.2d 650 (3rd Cir. 1975); *United States v. Moore,* 463 F.Supp. 1266 (S.D.N.Y. 1979); *United States v. St. Clair,* 240 F.Supp. 338 (S.D.N.Y. 1965). Resolution of this issue appears to turn on the size and configuration of the particular building. Although the record in this case is somewhat sketchy as to these details, the following are apparent. The building was fairly large since all parties referred to it as an "apartment complex," it had at least two

stories and five apartments, and there were other entrances in addition to the locked front door. We conclude the better rule is that there is no expectation of privacy in the hallways and common areas of a large apartment building, even one with controlled access. The fact that the front door may be locked for security reasons does not make the hallway part of a tenant's dwelling so that Fourth Amendment rights extend to it. *United States v. St. Clair, supra.* While the public is denied indiscriminate entry to these areas, the volume of traffic from fellow tenants, guests, landlords and maintenance personnel is sufficient to make any such subjective expectation of privacy objectively unreasonable. Thus, we hold that the police were in a place where they were lawfully entitled to be and were authorized to hear any conversations emanating from the apartment which could be heard in the hallway. As stated in *United States v. Llanes,* 398 F.2d 880 (2d Cir. 1968):

> What a person knowingly exposes to the public even in his own home or office, is not a subject of a Fourth Amendment protection. Conversations carried on in a tone of voice quite audible to a person outside are conversations knowingly exposed to the public.

The warrantless entry into the apartment is a different matter. The United States Supreme Court has held that absent consent or exigent circumstances, the government must obtain a warrant to conduct a search or effect an arrest in a private home *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). This same rule applies in the military. *United States v. Phinizy,* 12 M.J. 40 (C.M.A. 1981); *United States v. Davis,* 8 M.J. 79 (C.M.A. 1979); *United States v. Jamison,* 2 M.J. 906 (A.C.M.R. 1976). There is no question that the police had probable cause to apprehend the accused for his involvement in the previous offenses charged. They could easily have obtained an arrest warrant but appeared to be totally unaware that a warrant was required. In fact, the record shows they intended to arrest him even if the controlled

buy that evening failed. Thus, unless the arrest at the accused's residence can be justified as pursuant to exigent circumstances, the search incident thereto must also fail.

■ It is apparent that a number of exigencies did arise during the time the civilian police were in the hallway. They smelled the odor of burning marijuana, they heard a drug transaction being discussed and money being counted, and they heard part of the telephone call which may have aroused the accused's suspicions regarding Becker. Yet they did not rush the apartment until Becker had the marijuana and was safe in the hallway. Once an exigency has dissipated, the right to search without a search authorization is also extinguished. *United States v. Acosta,* 11 M.J. 307 (C.M.A. 1981). At the moment of entry into the apartment, all possible exigencies had dissipated with the possible exception that the accused would attempt to rid himself of any remaining contraband because of the telephone call. We note, however, that Becker apparently explained his situation to the satisfaction of the accused since the interrupted marijuana transaction was finally consummated after the telephone call. It would not be logical to infer that the accused would continue negotiating and dealing in drugs with Becker if any suspicions caused by the telephone call had not been sufficiently overcome.

■ Not only must there be probable cause to search, but also a reasonable belief that the destruction of evidence is imminent. *United States v. Rosselli,* 506 F.2d 627 (7th Cir. 1974). We hold that a far more substantial showing of exigency is required than was made here. Accordingly, the military judge erred by denying the defense motion to suppress the evidence related to the possession offense. Since there appears to be no other available evidence as to that offense, that specification will be dismissed.

The remaining errors assigned by counsel and the accused have been considered and are resolved adversely to the accused.

*United States v. Davison,* 4 M.J. 702 (A.C. M.R. 1977); *United States v. Kilby,* 3 M.J. 938 (N.C.M.R. 1977).

For the reasons stated, the finding of guilty of specification 4 of Charge I is set aside and, in the interest of justice, ordered dismissed. We have reassessed the sentence based on the remaining findings of guilty and find only so much thereof as provides for a bad conduct discharge, confinement at hard labor for 20 months, forfeiture of $367.00 per month for 20 months, and reduction to airman basic appropriate.

The findings of guilty and the sentence, both as modified herein, are

AFFIRMED.

KASTL, Senior Judge, and HEMINGWAY, Judge, concur.