UNITED STATES, Appellee,

v.

Private First Class Jimmie PETERSON, Jr., 156–64–0470, United States Army, Appellant.

ACMR 8802002.

U.S. Army Court of Military Review.

3 May 1990.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Paula C. Juba, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Kathryn F. Forrester, JAGC, Captain George R. Johnson, JAGC (on brief).

Before KUCERA, GILLEY and GIUNTINI, Appellate Military Judges.

## OPINION OF THE COURT

KUCERA, Senior Judge:

The appellant was tried by a military judge sitting as a special court-martial. Contrary to his pleas, he was found guilty of wrongful use of cocaine sometime during the period between 29 March 1988 through 8 April 1988 and wrongful possession of cocaine on 3 May 1988. He was sentenced to a bad-conduct discharge, confinement for four months, and reduction to the grade of Private E1. The convening authority approved the sentence as adjudged.

In his first assignment of error, the appellant contends that:

THE MILITARY JUDGE ERRED IN FAILING TO SUPPRESS EVIDENCE WHICH WAS DISCOVERED AS THE RESULT OF A ROADSIDE SEARCH OF APPELLANT'S VEHICLE AS THE SEARCH VIOLATED APPELLANT'S FOURTH AMENDMENT RIGHTS.

Prior to the entry of pleas, the appellant made a motion to suppress two pieces of crack cocaine seized from and near appellant's vehicle by Police Officer Thorne in Panama City, Florida, on 3 May 1988, and all statements made by the accused concerning the incident in question.

The government's witness on the motion to suppress the evidence was Officer Thorne, who testified that around 9 p.m. on 3 May 1988, while driving around the city in an unmarked police van [1] he encountered a Lincoln Continental in a dead end alley in an area known for criminal activity. The alley was located across the street from an open field and wooded lot. Officer Thorne testified that he was aware that people frequently go to this area to loiter, "park," abandon stolen vehicles and to smoke, ingest or inhale cocaine. He then observed that the car had an out-of-state license plate. Based on these facts, the policeman decided to investigate. The car was parked and the lights were turned off. Officer Thorne flashed his search lights in the window of the car and saw appellant and his friend, Smith, sitting inside.

Thorne called the car's license number to his police dispatcher for a car check. Then he got out of his van and asked the appellant what he was doing there. Appellant replied that he was waiting for a white girl to come out of the end house on the alley.[2] Knowing that no whites live in that area, Officer Thorne confronted the appellant by telling him that "there ain't no way ... there aren't any white people living here. Now, what are you doing here?" Appellant then responded by producing his military identification card (ID) and telling Officer Thorne that he, the appellant, and his friend, Smith, were working undercover for the Fort Rucker Criminal Investigation Division (CID) getting drugs in the course of

---

1. The van did not have the usual police strobe lights or other police car indicators but did bear markings of the Panama City police.

2. Appellant testified that this reply was a fabrication.

their working on the drug trafficking problems in their unit.

Officer Thorne was not aware of any joint operations of his police department with that of Fort Rucker. Appellant's claim of working with the police seemed to Thorne even more implausible than the first reason appellant advanced for being in the area. Officer Thorne did not believe the appellant and consequently he directed the appellant and his friend, Smith, to stand to the front of appellant's car. Officer Thorne then focused his flashlight inside the driver's side of appellant's car. He did not see anything and asked the appellant if there were any weapons in the vehicle. Appellant said no. Then Officer Thorne asked if there was anything else in the car that the appellant wouldn't want Officer Thorne to find if Thorne should decide to look? Appellant replied, "No, sir, go right ahead [and look]." According to Officer Thorne, appellant's friend, Smith, also said, "Go right ahead and look." Pursuant to such consent, Officer Thorne opened the passenger compartment door and quickly looked under the seat. He did not see any weapons but noticed a lump under the rubber floor mat. He folded back the mat and found a piece of crack cocaine wrapped in a dollar bill.

Thereupon, Officer Thorne called for assistance on his walkie-talkie radio and held the appellant and his friend Smith until the arrival of Officer Bell. When Officer Bell arrived, she handcuffed the pair and placed them in the rear seat of her police car. Later, Officer Bell noticed a piece of tin foil in the dirt near the right front of appellant's Lincoln. She picked it up and handed it to Officer Thorne. He opened it and found another piece of crack cocaine.

Subsequently, in a sworn and properly warned statement, the appellant admitted to having purchased both pieces of crack cocaine. According to him, when Officer Thorne approached the car, appellant had one piece of crack cocaine wrapped in tin foil in his hand; to hide it he dropped it into his shorts. When he got outside of the Lincoln, the foil-wrapped piece of crack cocaine dropped to the ground where it was eventually noticed and picked up by Police Officer Bell.

The appellant and his friend, Smith, also testified. With the exception of not admitting to having told Officer Thorne to "go right ahead and look" in the car, their testimony did not materially differ from that of Officer Thorne.

The military judge entered his findings of fact[3] and denied the motion to suppress.

3. The following is a summary of the military judge's findings of fact:

(1) Initially, Officer Thorne did not stop appellant's vehicle because appellant was already stopped.

(2) Officer Thorne did not seize appellant because appellant on his own volition came over to Officer Thorne's van.

(3) Officer Thorne's stopping to inquire as to appellant's activity was not unreasonable, because he is entitled to inquire as to a citizen's activity or safety, or orientation as to place. Here, appellant was not in a well-travelled alley, but in a dark area, just sitting in his car. It was nighttime and this was an area where there had been burglaries, abandoned cars and narcotics use.

(4) Officer Thorne's suspicions were reasonably aroused by appellant's statement that he was waiting for a white girl, since Thorne knew this was an all-black neighborhood.

(5) His suspicions were further aroused by the location of appellant's car since appellant was from out-of-state and this was an out-of-the-way place.

(6) Appellant changed his story and said he was involved with CID in an undercover drug operation.

(7) The injection of drugs into the conversation raised Officer Thorne's suspicions even further.

(8) Officer Thorne had a reasonable suspicion that appellant was involved in a criminal undertaking and therefore, Thorne was justified in moving appellant and PVT Smith to the front of appellant's car.

(9) At this point, it was a *Terry* stop, and Thorne was justified in searching the inside of appellant's car for weapons, given that he was alone, no one else was in the area, and he faced appellant and Smith both of whom were of considerable size.

(10) Appellant's expectation of privacy in the interior of his car was *de minimus,* since they either left the doors ajar, or open.

(11) Officer Thorne's discovery of crack cocaine in the automobile occurred in the course of reasonable police behavior.

(12) No consent was given for the search of the car.

In our view, the piece of crack cocaine seized from appellant's vehicle and the piece found in its immediate vicinity, as well as the appellant's statements were admissible evidence. The "Fourth Amendment bars only unreasonable searches and seizures." *Maryland v. Buie*, —— U.S. ——, 110 S.Ct. 1093, 1096, 108 L.Ed.2d 276 (1990) (a case approving police officer's conduct of making a "protective sweep" of a house where they were making an arrest). Justice White stated that in assessing the reasonableness of searches, the Supreme Court has balanced "the intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.*

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the court justified a "stop and frisk or pat down search" as a 'mere minor inconvenience and petty indignity'" which could be properly imposed upon the citizen in the interest of effective law enforcement on the basis of a police officer's suspicions. *Id.* at 11, 88 S.Ct. at 1874–75 (footnote omitted).

The principles of *Terry* were applied in the context of a roadside encounter in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). In *Long*, the court found that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect may gain immediate control of weapons." *Id.* at 1049–1050, 103 S.Ct. at 3480–3481. "In a sense, *Long* authorized a 'frisk' of an automobile for weapons." *Buie*, 110 S.Ct. at 1097.

■ Having considered the totality of circumstances, we find that the initial encounter between Officer Thorne and the appellant was not a "seizure" of appellant's person within the meaning of the fourth amendment. *See Terry*, 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16. According to his own testimony, appellant did not even know that Thorne was a policeman until he, the appellant, on his own accord, got out of his car, heard the information about his Alabama car registration being transmitted over the radio in Thorne's van and handed Thorne his identification card. Appellant's subsequent advancement of two bogus reasons for being parked in the area of itinerant drug use and other crime reasonably led Officer Thorne to conclude that criminal activity may have been afoot and that the appellant and his friend, Smith, may have been armed and dangerous. There was sufficient cause for Officer Thorne to conduct a limited search of appellant's car. *See Long*, 463 U.S. at 1049, 103 S.Ct. at 3480–3481. *See also Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Within the framework of the Fourth Amendment, the search was reasonable and the contraband found was admissible in evidence.

■ We have also weighed the credibility of the witnesses and find that the appellant consented to Officer Thorne's search of the car. In an effort to bolster the veracity of his bogus claim that he and his friend were working for Fort Rucker CID, and to mask his recent purchase of crack cocaine, appellant pretended to enthusiastically cooperate in an attempt to portray himself as having nothing to hide. Knowing that he dropped one piece of cocaine in his shorts and believing that Smith had the other piece of cocaine on his person, appellant felt safe in telling Officer Thorne to go right ahead and look in the car. We find that, albeit to his subsequent regret, appellant and Smith purposely encouraged Officer Thorne to search[4] in order to divert Thorne's attention away from themselves.

■ In his second assignment of error, the appellant claims that the military judge erred to appellant's prejudice by incorrectly computing administrative credit for pretrial

---

4. As Officer Thorne started to lean in the passenger side of the vehicle, Smith, who knew that he hid the piece of cocaine under the mat, kept suggesting that if Thorne wanted to look in the trunk, there was a trunk release button in the glove compartment.

confinement pursuant to Rule for Courts–Martial 305(k).

Appellant was arrested by civilian authorities on 3 May 1988. He was turned over to military authorities on 3 June 1988 and placed in military confinement. On 7 June 1988, the military magistrate reviewed appellant's pretrial confinement and ordered him released.

Appellant's trial defense counsel made a timely motion for administrative credit pursuant to *United States v. Allen*, 17 M.J. 126 (C.M.A.1984) and for an additional 29 days' credit based on the government's failure to ensure the prompt return of appellant to military authority. Defense's position was that the appellant's extended period of confinement in the civilian facility thwarted the requirement of magisterial review within seven days after confinement was initially imposed.

The military judge ruled that from the 3rd to the 10th of May appellant was confined "solely through the impetus of civil authorities" and therefore he was not entitled to any *Allen* credit for the first seven days. From 10 to 25 May,[5] appellant was awarded 15 days of *Allen* credit, and from 25 May to 7 June, two for one, for 26 days, a total of 41 days' credit. We disagree with the military judge's determination of credit in this case.

The facts in the trial defense counsel's written motion for administrative credit, state that "the accused's company commander was notified shortly [after the 3 May arrest] as was the Office of the Staff Judge Advocate at Fort Rucker, Alabama," and that the prosecutorial staff at Fort Rucker contemplated prosecution of the accused by court-martial from the time it was notified about the allegation against the accused. The meaning of the word "shortly" is not further explained or developed in the record. The stipulated recollection of a Panama City prosecutor was that almost directly following the accused's apprehension, the official was contacted by military authorities who requested release of the appellant. The prosecutor was willing to release appellant providing he was assured in writing that appellant would be prosecuted by the military. Having considered that the appellant told the civilian authorities that he was a soldier working for Fort Rucker CID on drug problems of his unit, and that the civilian authorities in fact called Fort Rucker CID to verify appellant's claim, we interpret the word "shortly" to mean on the 4th of May, the day after the arrest. From that day on, appellant was held in civilian confinement at the behest of the military.[6] Computing administrative credit accordingly, we hold the one-for-one day *Allen* credit period ran from 4 May through 7 June 1988 (34 days)[7] and the seven-day period during which to conduct a military magistrate's review also began to run on 4 May.[8] Consequently, the period for R.C.M. 305(k) credit began on 10 May and ran through 6 June (28 days), the day before the military magistrate reviewed appellant's pretrial confinement and ordered him released.[9] By our

---

5. On 25 May 1988, the Staff Judge Advocate sent a letter to civil authorities in Panama City, Florida, assuring them that the accused would be tried by court-martial and asking for appellant's release to military authorities.

6. Even the trial defense counsel was unable to find out exactly what was said to whom and when about the release of appellant to the military. She stated that:

> Now, I did make a discovery request for a synopsis of conversations concerning those incidents and apparently they involved the previous prosecutor and that was never able to be answered by the government, apparently. So the defense is at a loss to give you an exact date on when these conversations took place.

7. In *United States v. New*, 23 M.J. 889 (A.C.M.R. 1987), this court determined that in computing *Allen* credit, the first day of confinement should be omitted and the last day included.

8. Prior to the notification to military authorities, which we determine had taken place on 4 May, the appellant was held by and for the State authorities for which time he was not entitled to credit. *See United States v. Ballesteros*, 29 M.J. 14 (C.M.A.1989).

9. In *United States v. DeLoatch*, 25 M.J. 718 (A.C.M.R.1987), this court made clear that the magistrate's review must be conducted no later than the seventh day of pretrial confinement; also, credit begins to accrue on the seventh day and runs until the day before the review is conduct-

calculation, the combined credit to which the appellant was entitled is 62 days.

We are advised that the appellant has served his sentence to confinement and is awaiting the results of appellate review. As the appellant was not sentenced to any deprivation of pay, or fine, nor is any portion of the sentence extending to deprivation of liberty extant, no adjustment to the sentence on the basis of our determination of additional entitlement to credit will be made. *See* R.C.M. 305(k) analysis, App. 21, A21–17. *See also United States v. Howard,* 25 M.J. 533 (A.C.M.R.1987), *pet. denied,* 26 M.J. 79 (C.M.A.1988).

ed. *See also United States v. Ballesteros, 29 M.J.* 14 (C.M.A.1989).

We have considered the other issues personally raised by the appellant and find them to be without merit.

The findings of guilty and sentence are affirmed.

Judge GILLEY and Judge GIUNTINI concur.