UNITED STATES, Appellee,

v.

Private First Class James D. FINAN, 403–08–9677, United States Army, Appellant.

ACMR 8902158.

U.S. Army Court of Military Review.

29 June 1990.

For Appellant: Captain Brian D. Bailey, JAGC, Captain Allen F. Bareford, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Randy V. Cargill, JAGC, Captain James A. Nortz, JAGC (on brief).

Before FOREMAN, JOHNSON and VARO, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSON, Judge:

A military judge sitting as a general court-martial found appellant guilty, contrary to his pleas, of assault consummated by a battery, assault, and drunk and disorderly conduct in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934 (1982). The convening authority approved the sentence to a bad conduct discharge, confinement for nine months, and forfeiture of $500.00 pay per month for nine months.

Appellant asserts that the military judge found appellant guilty of an offense with which he was not charged. We agree.

While in the execution of his duties as a military policeman, Corporal (CPL) Ferry was dispatched to an establishment known locally as Maggie's Gasthouse in Schweinfurt, West Germany, to look into a disturbance complaint. At the gasthouse, CPL Ferry learned from the manager that Private (PVT) Battersby, who was sitting at the bar, and the appellant, who was outside the building at that moment, were drunk and had been harassing a patron and disturbing other guests. CPL Ferry attempted to escort PVT Battersby from the gasthouse peacefully, but the latter resisted and a struggle ensued. As CPL Ferry held PVT Battersby on the floor and attempted to place handcuffs on him, appellant reentered the building with a beer bottle in his hand and, while observing the struggle, rushed toward CPL Ferry. A waitress grabbed the beer bottle from appellant's hand but appellant then seized CPL Ferry around the neck and shoulders. A German and another soldier pulled appellant away from CPL Ferry, but moments later he broke free and again grabbed CPL Ferry from behind. CPL Ferry ceased his attempt to subdue PVT Battersby, freed himself from appellant, and went outside to radio for military police (MP) reinforcements. Apparently the gasthouse manager had also called the MP station, for as soon as CPL Ferry completed his radio call, he heard sirens approaching. He then returned to the gasthouse and started up the front entrance stairway just as appellant and PVT Battersby were leaving the building. CPL Ferry told them, "You're not going anywhere." They said they were leaving and, according to CPL Ferry's testimony, "Finan tried to do a karate move, tried to kick me, which didn't, the kick didn't strike me." CPL Ferry pushed appellant back through the doorway and both appellant and PVT Battersby were apprehended as MP reinforcements arrived at that moment.

Appellant was originally charged with two specifications of assault on a military policeman: the first, an aggravated assault by swinging at a him with a beer bottle, and a second specification of assault by "choking him and hitting him in the body." The military judge found appellant guilty of the first specification by substituting the words "grabbing him by the shoulders and around the neck," for the words "swinging at him with a beer bottle, a means likely to cause death or grievous bodily harm." He found the appellant guilty of the second specification by substituting the words "kicking at him with a shod foot" for the words "choking him and hitting him on the body." Appellant asserts that the "kicking" assault cannot stand since it was not fairly embodied in the specifications referred to trial, and therefore amounts to a conviction for an offense with which he was not charged. It is apparent that the original assault specifications related to the initial scuffles which took place inside the gasthouse, whereas the substituted "kicking" assault referred to the subsequent confrontation on the front steps of the gasthouse.

It is a fundamental proposition of criminal law that an accused cannot be convicted of an offense different from that charged. *United States v. Wray,* 17 M.J. 375, 376 (C.M.A.1984). Therefore, considerable care must be taken in drafting specifications to ensure that the essential facts constituting an offense are set forth. Nevertheless, when testimony is presented at trial, it is not uncommon to find a variance between the pleading and the proof. This occurs "when the evidence adduced at trial establishes the commission of a criminal offense by the accused but this proof does not conform strictly with the criminal offense alleged within the specification of the charge." *United States v. Rath,* 27 M.J. 600, 604 (A.C.M.R.1988), *pet. denied,* 29 M.J. 284 (C.M.A.1989). To remedy such a situation, the Manual for Courts–Martial permits exceptions and substitutions to conform the specification to the proof. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 918(a)(1) [hereinafter R.C.M.]. Thus, "[o]ne or more

words or figures may be excepted from a specification and, when necessary, others substituted, if the remaining language of the specification, with or without substitutions, states an offense by the accused which is punishable by courts-martial." R.C.M. 918(a)(1) discussion. When an issue of variance is raised, it is necessary to test for prejudice. *United States v. Lee,* 1 M.J. 15, 16 (C.M.A.1975). This court has said that "we must ensure that the appellant was afforded an opportunity to defend against the charge of which he was convicted." *Rath,* 27 M.J. at 605.

■ Turning now to the exceptions and substitutions made by the military judge in the present case, when he substituted the words "by grabbing [CPL Ferry] by the shoulders and around the neck" in Specification 1 of Charge I for the deleted words "swing at him with a beer bottle, a means likely to cause death or grievous bodily harm," two things were accomplished. First, he found the appellant not guilty, in effect, of the aggravated assault involving the beer bottle. Second, he found the appellant guilty of an assault consummated by a battery, the same assault as originally alleged in Specification 2 of Charge I by the descriptive words "choking him and hitting him on the body." Viewed in this way, the modification made to the first specification to accommodate a variance between the pleadings and the proof resulted in no unfair prejudice to the appellant. The victim, the time, the place, and the particular scuffle to which it related were all identical. Accordingly, the appellant could not have been misled as to the nature of the offense to be defended.

■ On the other hand, the substitution of the words "kicking at him with a shod foot" in Specification 2 of Charge I presents a different situation. Although the victim is the same, these words relate to the confrontation on the front steps of the gasthouse which was separated in time and place from the preceding scuffles which occurred inside. In short, the "kicking" assault cannot be said to have been included in the Specification 2 of Charge I assault as originally drafted. The overt

**1164**

acts describing the outside confrontation were not charged. Although CPL Ferry's testimony regarding the incident on the front steps was unambiguous, neither party at trial addressed those acts. Nor did the military judge refer to the kicking incident until he announced the findings. Under the circumstances, the appellant was not reasonably alerted to be prepared to defend against that specific assault. This is true even though the appellant had knowledge of the kicking incident prior to trial by testimony provided at the Article 32 investigation. Since the government was equally aware of the alleged kicking assault and chose not to prefer an additional specification before trial, it appears that appellant may well have been misled into believing that there would be no need to defend that incident. Accordingly, we will set aside Specification 2 of Charge I, the kicking assault, and reassess the sentence.

The finding of guilty of Specification 2 of Charge I is set aside, and Specification 2 of Charge I is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for six months, and forfeiture of $500.00 pay per month for six months.

Senior Judge FOREMAN and Judge VARO concur.