*508 OPINION OF THE COURT
BECKER, Judge:
Contrary to the appellant’s pleas, members convicted him of rape, wrongful appropriation, aggravated assault, and communicating a threat, in violation of Articles 120, 121,128, and 134, respectively.[1] Appellant was sentenced to a dishonorable discharge, confinement for 10 years, forfeiture of $250 per month for 10 years, and reduction to E-l. The victim of the rape, assault, and threat was the appellant’s former girlfriend, AGW. The subject of the wrongful appropriation was a pistol owned by a Senior Airman Barossa. The prosecution theory was that the appellant took Barossa’s pistol without his permission, and then used it to commit the rape and aggravated assault on AGW.
Appellant asserts 11 assignments of error, three of which have merit. We set aside his conviction for communicating a threat, modify the finding of guilty of aggravated assault, and reassess his sentence. We also order sentence credit for civilian pretrial confinement, in addition to the previously ordered credit for military pretrial confinement.
I. AMENDMENT TO AGGRAVATED ASSAULT SPECIFICATION
As originally preferred, the specification of Charge III alleged that the appellant committed an assault on AGW “by striking her on the head, arms, and abdomen with a dangerous weapon, to wit: a loaded firearm.” After the Article 32, UCMJ,[2] investigation, the convening authority referred Charge III with an amended specification, which now alleged an assault on AGW “by striking her on the head, arms, and abdomen with a means likely to produce death or grievous bodily harm, to wit: a loaded firearm used as a bludgeon, and by pointing at her head a dangerous weapon, to wit: a loaded firearm.” (Emphasis added). The amended specification was not re-preferred before referral. At trial, the defense moved to dismiss the added allegations, arguing the amendments were a substantial change which may not be made over the appellant’s objection without a new preferral. The military judge denied the motion. Appellant now contends the military judge erred. We agree.
Before arraignment, a convening authority (and other authorized persons) may make “minor” changes to specifications without restriction. R.C.M. 603(b). However, they may not make “major” changes, over an accused’s objection, unless the specification is preferred anew. R.C.M. 603(d). By definition, any changes are “minor” unless they “add a party, offenses, or substantial matter not fairly included in those previously preferred, or ... are likely to mislead the accused....” R.C.M. 603(a).
It should be self-evident that the amendments to the specification of Charge III included “substantial matter not fairly included in those previously preferred.” These amendments alleged a new means by which the appellant committed the crime of aggravated assault. Before the change, the appellant was charged only with pistol-whipping AGW. The fact the gun was loaded was immaterial to its use as a club, and the allegation that the firearm was “loaded” was surplusage. However, the convening authority’s amendment literally turned the gun around. Now the specification also alleged the appellant used the gun in the manner normally associated with firearms — by pointing its business end toward a human target. If this was not initially clear to the military judge, it should have become so later as he struggled to fashion appropriate findings instructions and realized he had two different sets of allegations:
MJ: The way I’m looking at the evidence, if they believe that he held a loaded pistol pointed at her head, that would be one time of aggravated assault.
TC: Offering to do.
MJ: Offering to do.
TC: Yes, sir.
MJ: Whereas if he hit her with it, then that would another type, if you follow me?
TC: Right.
*509 MJ: So, they might find both occurred, neither occurred or they may find one or the other occurred.
Moreover, the convening authority’s amendment increased the maximum punishment for the offense. Before the change, the specification alleged only aggravated assault by pistol-whipping. As noted above, the allegation of a “loaded” firearm was surplus to the pistol’s use as a club. Therefore, the maximum confinement for this specification, in its original form, would have been 3 years. MCM, Part IV ¶ 54e(8)(b) (1984). However, after the amendment added the “pointing at her head” allegation, the “loaded” firearm allegation took on profound significance, raising the maximum confinement sentence to 8 years. Id. ¶ 54e(8)(a).
For these reasons, we hold that the amendment to the specification of Charge III added “substantial matter not fairly included” in the original specification and, therefore, was not a “minor” change. This major change required either the appellant’s acquiescence or a re-preferral of the specification. In that the specification was not preferred anew and the appellant did object, the military judge erred in denying the motion to dismiss the new matter. See United States v. Longmire, 39 M.J. 536 (A.C.M.R.1994) (amendment to Article 92(2) specification changing date of order and identity of issuing officer, but not substance of the alleged disobedience, was major change). Compare United States v. Brown, 34 M.J. 105, 109-110 (C.M.A.1992) (change in alleged dates was minor); United States v. Finan, 30 M.J. 1161, 1163 (A.C.M.R.1990) (exceptions and substitutions resulted in a lesser degree of guilt); United States v. Brown, 21 M.J. 995, 997 (A.C.M.R.1986) (amendment changed allegation to lesser included offense). Cf. United States v. Cooper-Tyson, 37 M.J. 481 (C.M.A.1993) (accused’s guilty plea to Article 112a specification was provident, although she substituted date of offense and identity of drug; accused waived any R.C.M. 603 objection).
Consistent with this holding, we will affirm the finding of guilty to Charge III (a violation of Article 128), and a finding of guilty to the specification of Charge III which does not include pointing the loaded pistol at AGW. We will recite this finding in the last section of this opinion. We must also consider the impact of this error on the appellant’s sentence. We will do so in the last section of this opinion after we have addressed the remaining assignments of error.
II. INSTRUCTIONS ON COMMUNICATING A THREAT
The specification of Charge IV alleged that the appellant communicated to AGW a threat to kill her. AGW testified that, after the appellant attacked and raped her, he threw her out of his apartment semi-clothed and said “if you ... tell the police, I’ll kill you.” A female friend of AGW testified she saw the appellant throw AGW outside, and heard him say “if you say anything to the police, I’ll kill you.” Appellant testified his sex with AGW was consensual, but they argued afterward. According to the appellant, AGW threatened to harm the appellant’s wife and child, and he responded “if you do anything to my family ... then I will kill you.” He denied telling AGW he would kill her if she went to the police.
During the Article 39(a), UCMJ,[3] session on findings instructions, the defense requested the military judge to instruct the members that “contingent words will neutralize threat declarations ... where there is no reasonable possibility that the uncertain or contingent events will occur— Thus, if you determine that no reasonable person would have harmed SrA Murray’s family in order to provoke an assault upon himself or herself, you may not find the Accused guilty of communicating a threat.” The military judge denied the requested instruction without explanation.
The military judge went on to instruct the members on the elements of the offense of communicating a threat, which included the element that the accused’s communication must have been “wrongful.” However, these instructions did not define the concept of “wrongfulness,” or explain that threats made *510 for a legitímate purpose were not wrongful. Other than the requested instruction on contingent words, the defense did not object to this instruction or request inclusion of other matters.
Appellant now argues the military judge erred in denying his requested instruction on contingent words. The government counters that the military judge made the correct ruling because contingency, as a defense to communicating a threat, was not raised as a matter of law. While we agree contingency was not raised, we nonetheless hold that the military judge’s instructions were erroneous.
In focusing on the legal effect of contingent threats, the parties have missed the issue. It is true that an element of the offense of communicating a threat is that the words must express a “present determination or intent” to hurt the victim. MCM, Part IV ¶ 110(b)(1) (1984). It is also true that contingent words will neutralize a “present determination or intent,” and thus negate this essential element, when there is no reasonable possibility the contingent event could take place or when an accused has no right to impose the condition. See United States v. Alford, 34 M.J. 150 (C.M.A.1992); United States v. Shropshire, 20 U.S.C.M.A. 374, 43 C.M.R. 214 (1971); United States v. Johnson, 49 C.M.R. 278 (A.F.C.M.R.1974). As the government correctly points out, the appellant had no right to impose a condition that AGW not contact the police, and there was certainly a reasonable possibility that she would do so. However, the government argument ignores the appellant’s testimony, where he claimed his threat was in response to AGW’s threat to hurt his family. For the appellant’s part, he does not help his cause by continuing to press the contingent words argument before this Court. If contingency were truly the issue here, we would be inclined to rule that the words “if you hurt my family” do not neutralize a “present determination or intent” to hurt AGW.
However, the contingent nature of the appellant’s words is not important. It is their wrongfulness that is in issue. Whether the appellant’s language expressed a present determination or intent to injure is an element completely separate from whether the words were wrongful. MCM, Part IV ¶ 110(b)(1), (3) (1984); United States v. Caver, 41 M.J. 556, 564 (N.M.Ct.Crim.App.1994).
Otherwise threatening words are not wrongful if expressed for a “legitimate purpose.” MCM, Part IV ¶ 110(c) (1984); see also United States v. Schmidt, 16 U.S.C.M.A. 57, 36 C.M.R. 213 (1966) (soldier’s threat to expose commander’s abusive treatment to newspapers was not wrongful). Threats made in self-defense are not wrongful. Caver, 41 M.J. at 564; United States v. Greer, 43 C.M.R. 801, 804 (A.C.M.R.1971). It logically follows that threats made in defense of another also are not wrongful. See R.C.M. 916(e)(5). If there is any ambiguity in this authority, we resolve it now. We hold that threats communicated in lawful self-defense or in defense of another are for a legitimate purpose and, therefore, are not wrongful.
We emphasize that a legitimate purpose is an affirmative or special defense to communicating a threat. See R.C.M. 916(a). Therefore, the prosecution need not refute all conceivable legitimate purposes for a threat in its case-in-chief. However, once evidence raises an issue of a legitimate purpose, the prosecution has the burden to disprove it beyond a reasonable doubt. R.C.M. 916(b).
The military judge has a duty to give members appropriate findings instructions. R.C.M. 920(a). The parties have an opportunity to request instructions. R.C.M. 920(c). Failure to object to matters included in or omitted from instructions is a waiver, in the absence of plain error. R.C.M. 920(f). However, waiver does not apply to instructions on elements of offenses, an area where the military judge has a sua sponte duty to give the members complete and correct advice. United States v. Mance, 26 M.J. 244, 256 (C.M.A.), cert, denied, 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988); United States v. Mitchell, 15 M.J. 214, 217 (C.M.A.1983); United States v. Gaiter, 1 M.J. 54, 56 (C.M.A.1975); United States v. Lancaster, 36 M.J. 1115, 1119 (A.F.C.M.R.1993); United States v. Alford, 31 M.J. 814, 818 (A.F.C.M.R.1990) pet. denied, 33 M.J. 198 (C.M.A.1991).
*511 The military judge also has an obligation to instruct on any special defense when it is raised by the evidence. Failure of an accused to request such an instruction will not waive an erroneous omission. United States v. Martinez, 40 M.J. 426, 431 (C.M.A.1994); United States v. Barnes, 39 M.J. 230, 233 (C.M.A.1994); United States v. Taylor, 26 M.J. 127, 129 (C.M.A.1988). Compare United States v. Weinmann, 37 M.J. 724 (A.F.C.M.R.1993) (an express waiver of affirmative defense is effective) pet. denied 40 M.J. 41 (C.M.A.1994). The military judge must tailor special defense instructions to the facts of the case. Martinez, 40 M.J. at 431 (citing United States v. Groce, 3 M.J. 369, 371 (C.M.A.1977)). However, there is no sua sponte duty to instruct on every fact that may support a defense. United States v. Sanders, 41 M.J. 485, 486 (1995).
Appellant testified that AGW threatened to physically harm his wife and child and, in response, he threatened to kill her if she did. If these facts were true and the appellant’s purpose in threatening AGW was to protect his family, his words were not wrongfid and he did not commit the crime of communicating a threat. The military judge had an obligation to instruct the members to this effect. Besides identifying the wrongfulness element, the military judge needed to advise the members that threats made for a legitimate purpose are not wrongful. Further, in that the appellant raised defense of his family as his purpose in making the threat, the military judge had a duty to instruct that such would be a legitimate purpose, and that the prosecution must prove beyond a reasonable doubt that the appellant did not have a legitimate purpose in making the threat. The defense’s failure to request inclusion of such language did not relieve the military judge of this responsibility.
We hold that the military judge committed prejudicial error by failing to properly instruct the members on the elements of communicating a threat, and on the defense of legitimate purpose raised by the appellant. Accordingly, we set aside the findings of guilty to the specification of Charge IV and Charge IV. We will address sentence relief in the final section of this opinion.
III. ALLEN CREDIT FOR CIVILIAN PRETRIAL CONFINEMENT
Okaloosa County, Florida, Sheriff’s deputies arrested the appellant on 24 November 1992 for allegedly raping AGW. The state filed charges and held him in the county jail until 8 January 1993. On that date, the appellant made bail and was released. Air Force authorities at Hurlburt Air Force Base immediately agreed to assume jurisdiction from the state, and the appellant’s commander ordered him into pretrial confinement on 8 January 1993. After the appellant’s conviction on 27 March 1993, the military judge acknowledged a sentence credit for 78 days of military pretrial confinement. The defense asked the military judge to also award additional credit for the 46 days the appellant spent in civilian pretrial confinement. The military judge denied this request.
Appellant concedes his civilian pretrial confinement was neither initiated nor continued at the request of Air Force authorities. However, he invites our attention to United States v. Allen, 17 M.J. 126 (C.M.A.1984), which requires day-for-day sentence credit for military pretrial confinement. Appellant argues Allen as authority for the additional 46-day credit as a matter of “fundamental fairness.” The government opposes, relying on case law holding the military’s pretrial confinement procedures are applicable to civilian confinement only when civilians jail an accused with the knowledge and approval, or at the behest, of military authorities. See United States v. Ballesteros, 29 M.J. 14, 16 (C.M.A.1989); United States v. Peterson, 30 M.J. 946, 950 (A.C.M.R.1990). See also United States v. Stuart, 36 M.J. 746 (A.C.M.R.1993).
Again, this issue has not been correctly framed. The so-called Allen credit has nothing to do with notions of “fundamental fairness” or military responsibility for civilian pretrial confinement. In Allen, the Court of Military Appeals simply applied a Department of Defense instruction. This instruction required the military departments to compute confinement sentences the same way as the Department of Justice. Because the Department of Justice gave day-for-day *512 credit for pretrial confinement to federal prisoners, the court ruled the military had to as well. Therefore, the correct issue here is this: Do Department of Defense directives still require the military to follow Department of Justice sentence computation rules and, if so, is the Department of Justice required to credit state pretrial confinement to federal sentences?
The answer to the first part of the above question is clearly “yes.” The Department of Defense instruction applied in Allen has been superseded. However, its successor contains the same requirement:
Computation of sentences. Procedures employed in the computation of sentences shall conform to those established by the Department of Justice (DoJ) for Federal prisoners unless they conflict with this Directive.
Department of Defense Directive 1325.4, “Confinement of Military Prisoners and Administration of Correctional Programs and Facilities,” end. 1 ¶ H.5 (19 May 1988). This directive is silent on confinement credits. Therefore, we must look to whether the Department of Justice credits federal prisoners with time served in state pretrial confinement.
Computation of federal confinement sentences is governed by statute. 18 U.S.C. § 3585(b) (1994)[4] states:
Credit for prior custody. A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
(1) as a result of the offense for which the sentence was imposed; or
(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.
(Emphasis added).
Judicial inquiry into the meaning of an unambiguous statute begins and ends with the plain language of the statute. Adams Fruit Co. v. Barrett, 494 U.S. 638, 642, 110 S.Ct. 1384, 1386-87, 108 L.Ed.2d 585 (1990); Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 701-02, 66 L.Ed.2d 633 (1981); Greyhound Corp. v. Mt. Hood Stages, 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978); United States v. Maxwell, 42 M.J. 568, 580 (A.F.Ct.Crim.App.1995). The meaning of 18 U.S.C. § 3585(b) is plain — as long as a federal prisoner has not already received credit for pretrial confinement against another sentence, he receives credit against his pending federal sentence. The statute does not discriminate based on the sovereign responsible for the pretrial confinement. Rather, it readily appears Congress intended this statute to cover state-imposed pretrial confinement. Otherwise, why use broad terms like “official detention” and “any other charge ... after the commission of the offense,” when Congress could have expressly narrowed the scope of the statute to federal custody? Moreover, we see the no-prior-credit proviso in the last line of the statute as including the scenario where a convict has committed crimes under both federal and state law. If a prisoner has been confined by the state after the commission of the offense, then he receives credit against his federal sentence — unless such custody already has been credited against a state sentence. The United States Sentencing Commission also shares this interpretation of the law. See U.S. Sentencing Comm. Notice of Proposed Amendments, 60 Fed.Reg. 2430, 2465 (1995).
More important, the United States courts have construed 18 U.S.C. § 3585(b) to require federal sentence credit for state pretrial confinement. Under a predecessor to 18 U.S.C. § 3585,[5] some courts held sentence credit was limited to pretrial custody under *513 federal authority. See United States v. Garcia-Gutierrez, 835 F.2d 585 (5th Cir.1988); United States v. Blankenship, 733 F.2d 433 (6th Cir.1984). However, the courts have construed the broader language of the current statute to require federal credit for state pretrial confinement. United States v. Wilson, 916 F.2d 1115, 1118 (6th Cir.1990), rev’d on other grounds, 503 U.S. 329, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992); United States v. Richardson, 901 F.2d 867, 870 (10th Cir.1990). In Wilson, the Supreme Court held the Sixth Circuit erred in ruling that 18 U.S.C. § 3585(b) required the district courts to assess sentence credit instead of the Attorney General. However, the Court did not dispute the Sixth Circuit’s construction of the statute to require federal sentence credit for state pretrial confinement. Indeed, the Court expressly conceded the new statute had broadened the effect of its predecessor in three ways, including enlarging the class of defendants entitled to credit. 503 U.S. at 335-338, 112 S.Ct. at 1355-1356.
Therefore, we also answer the second part of this issue in the affirmative — if the appellant had been convicted and sentenced in United States District Court, the Attorney General would credit his sentence for the 46 days of state pretrial confinement. Department of Defense Directive 1325.4 requires the military to do the same. In our decretal paragraph, we will direct that the appellant receive 46 days of additional sentence credit.
IV. REMAINING ASSIGNMENTS OF ERROR

Warrantless Entry into Appellant’s Apartment

After AGW reported the rape and assault, Okaloosa County deputies went to the appellant’s apartment to apprehend him. They did not have either a search or arrest warrant. According to testimony from the deputy in charge of this operation, he believed the appellant was armed and dangerous, and might succeed in escaping or destroying evidence if the deputies took the time to seek a warrant Appellant was not at home when the deputies arrived. The apartment door was ajar, and the deputies entered with guns drawn. They observed and seized AGWs clothing lying in plain view, and took photographs of the premises. At trial, the defense moved to suppress this evidence as the products of an unlawful warrantless search. The military judge denied the motion.
The primary basis for the military judge's ruling was that exigent circumstances excused the absence of either a search or arrest warrant. We agree. See Mil.R.Evid. 315(g)(1), (4); R.C.M. 302(e)(2)(B); United States v. Mitchell, 12 M.J. 265, 270 (C.M.A. 1982); United States v. Phinizy, 12 M.J. 40, 42 (C.M.A.1981). Compare United States v. Baker, 14 M.J. 602, 605 (A.F.C.M.R.), (exigent circumstances had dissipated before entry into apartment) pet. denied, 15 M.J. 73 (C.M.A.1982).
The military judge also ruled that, even if exigent circumstances had not justified the warrantless entry, he would not invoke the exclusionary rule because the evidence eventually would have been lawfully obtained. We also agree that the so-called “inevitable discovery doctrine” applies here, even assuming the deputies’ warrantless entry had been unlawful. See Mil.R.Evid. 311(b)(2); United States v. Loving, 41 M.J. 213, 245 (1994); United States v. Allen, 34 M.J. 228 (C.M.A.) cert, denied 506 U.S. 916, 113 S.Ct. 324, 121 L.Ed.2d 244 (1992); United States v. Kozak, 12 M.J. 389 (C.M.A.1982). Compare United States v. Chick, 30 M. J. 658 (A.F.C.M.R.) (evidence insufficient to show magistrate would have authorized search which would have uncovered items seized), pet. denied, 31 M.J. 436 (C.M.A.1990)

Identity of AGW’s Boyfriend

AGW testified she had sex with her boyfriend about two weeks before the appellant raped her. At time of trial, she was about four months pregnant. According to AGW, the baby’s father was either the appellant (from the rape) or her boyfriend (from the sex two weeks before), but she would not know which until blood tests after the baby is born. AGW identified her boyfriend only by his nickname. On cross-examination, the defense asked AGW for his full name. On objection by the trial counsel, the military *514 judge ruled the boyfriend’s name was not relevant.
We concur with the military judge’s ruling. Despite being pressed for the reasons it wanted this information, the defense was never able to articulate exactly how the boyfriend’s identity had “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Mil.R.Evid. 401. We find this difficulty understandable, as we can see no way to fit the boyfriend’s name into this definition of “relevant evidence.” There is no question the appellant had sex with AGW — he admitted it. There is also no question AGW had sex with someone else some days before — she admitted it. To the extent the identity of the baby’s father may have been relevant as an aggravating or mitigating factor in sentencing, there was no way to find that out during the trial. The boyfriend’s full name had absolutely no tendency to prove or disprove any fact in issue at the trial.

Failure to Instruct on Mistake of Fact

The military judge did not instruct the members that the appellant’s mistake of fact as to AGWs consent would be a defense to the rape charge. The defense did not ask for such an instruction. Appellant now argues the military judge had a sua sponte duty to give that instruction. We disagree.
As noted above, a military judge has a sua sponte duty to instruct on an affirmative defense, but only if that defense is raised by the evidence. Martinez; Barnes; Taylor. Appellant did not introduce any evidence that he was mistaken as to AGWs consent. To the contrary, he described AGWs participation in sex on the night in question as willing and enthusiastic. A military judge has no duty to instruct on mistake of fact as to consent “where the evidence raises and the parties dispute only the question of actual consent.” United States v. Willis, 41 M.J. 435, 438 (1995).

Sufficiency of the Evidence, Sentencing, and Posttrial Issues

Appellant contends the evidence is factually insufficient to support the convictions for the rape and aggravated assault of AGW, and wrongful appropriation of Airman Barossa’s pistol. We disagree. Mindful that we have modified the aggravated assault finding, we are convinced beyond a reasonable doubt the appellant committed each offense. United States v. Turner, 25 M.J. 324, 325 (C.M.A. 1987).
Appellant contends the military judge erred in ruling the offenses were not multiplicious for sentencing purposes. Appellant’s convictions were not multiplicious for any purpose. It was proper to separately convict and punish him for each. See Schmuck v. United States, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); United States v. Teters, 37 M.J. 370 (C.M.A.1993), cert. denied, — U.S. -, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994). See also Article 56, UCMJ;[6] R.C.M. 1003(c)(1)(C); United States v. Morrison, 41 M.J. 482, 483-484 (1995); United States v. Lenoir, 39 M.J. 751, 752 (A.F.C.M.R.), pet. denied, 40 M.J. 276 (C.M.A.1994).
Appellant claims he is entitled to additional sentence credit for illegal pretrial confinement, in that he did not receive a probable cause review within 48 hours of confinement as required by County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), and United States v. Rexroat, 38 M.J. 292 (C.M.A.1993) cert, denied — U.S. -, 114 S.Ct. 1296, 127 L. Ed.2d 648 (1994). Appellant did not raise this issue at trial. Accordingly, it is waived. R.C.M. 905(e); United States v. McCants, 39 M. J. 91 (C.M.A.1994).
Appellant asks us to set aside the convening authority’s action because the staff judge advocate failed to advise the convening authority that he must consider the appellant’s posttrial submissions, citing United States v. Foy, 30 M.J. 664, 665 (A.F.C.M.R. 1990). See also United States v. Craig, 28 *515 M.J. 321 (C.M.A.1989). The staff judge advocate’s recommendation and its addendum do not expressly advise the convening authority of this duty. However, other posttrial documents show the convening authority personally reviewed all the appellant’s submissions before taking action. See United States v. Crawford, 34 M.J. 758 (A.F.C.M.R. 1992), pet. denied, 36 M.J. 202 (C.M.A.1992); United States v. Blanch, 29 M.J. 672 (A.F.C.M.R.1989).
Finally, the appellant argues that his sentence is inappropriately severe. In that we have modified one finding of guilty and set aside another, we will address this assignment in the next section of this opinion, after we have reassessed the appellant’s sentence.
V. DECISION
We set aside the findings of guilty to Charge IV and its specification (communicating a threat). In the interests of judicial economy, we dismiss Charge IV and its specification. We affirm the findings of guilty to the specification of Charge I and Charge I, and the specification of Charge II and Charge II. We affirm the finding of guilty to Charge III, and affirm a finding of guilty to the following specification of Charge III:
In that Senior Airman Anthony K. Murray, United States Air Force, 20th Special Operations Squadron, did, at or near Fort Walton Beach, Florida, on or about 24 November 1992, commit an assault upon [AGW] by striking her on the head, arms, legs, and abdomen with a means likely to produce grievous bodily harm, to wit: a firearm used as a bludgeon.
We are aware the above finding is not identical to the specification as it appeared before the convening authority’s amendment. However, to the extent the amendment cleaned up the pistol-whipping allegation to put it in proper form, it was clearly a minor change permissible under R.C.M. 603(b). We have also eliminated the surplus “loaded” firearm allegation.
In that we have disapproved some findings of guilty, we must now try to decide what sentence would have been imposed those improper convictions. United States v. Sales, 22 M.J. 305, 307 (C.M.A.1986). If we can determine what sentence would have been adjudged, we may reassess it; otherwise, we must return the case for a rehearing. United States v. Jones, 39 M.J. 315, 317 (C.M.A.) cert denied, — U.S. -, 115 S.Ct. 635, 130 L.Ed.2d 540 (1994); United States v. Peoples, 29 M.J. 426 (C.M.A.1990). If we can determine what sentence would have been adjudged, we then must decide whether the sentence, as reassessed, is nonetheless appropriate. Peoples, 29 M.J. at 428; Sales, 22 M.J. at 308.
After weighing the improper convictions against those remaining, we believe we can reassess the sentence. While the improper convictions had some impact on the sentence, we conclude it was minimal. Even if the convening authority had not improperly amended the aggravated assault specification, the appellant’s act of pointing the loaded pistol at AGW would have still been admissible to prove the force element of the rape charge. See MCM, Part IV ¶ 45b(1)(c), c(1)(b); Mil.R.Evid. 404(b). Similarly, the appellant’s threat to kill AGW (which another witness overheard) would have been admissible as an admission corroborating AGW’s testimony, even if the threat had not been the subject of a charge. See Mil.R.Evid. 304(c)(2), 404(b), 801(d)(2)(A). Moreover, we believe the members could have properly considered both matters in aggravation of the rape offense, even if they had not been formally charged. See R.C.M. 1001(b)(4). Finally, our disapproval of these findings does not affect the maximum punishment. Appellant faced life imprisonment for the rape of AGW alone. Article 120(a), UCMJ.
We are confident that, absent the convictions of Charge IV and its specification and the specification of Charge III in its amended form, the members would have sentenced the appellant to confinement for at least 9 years and forfeiture of $250 per month for 9 years, in addition to the other adjudged sentence elements. We have given individualized consideration to the seriousness of the convictions, the character and military performance of the appellant, and all circumstances documented in the record of trial. United States v. Snelling, 14 M.J. 267 *516 (C.M.A.1982). We find the sentence, as reassessed, is not inappropriately severe. United States v. Healy, 26 M.J. 394 (C.M.A.1988).
We approve only so much of the adjudged sentence that extends to a dishonorable discharge, confinement for 9 years, forfeiture of $250 per month for 9 years, and reduction to the grade of E-1. We order that the appellant receive a total credit of 124 days against the confinement portion of his sentence, reflecting 46 days of civilian and 78 days of military pretrial confinement.
As modified, the findings and sentence are correct in law and fact. Accordingly, they are
AFFIRMED.
Senior Judges HEIMBURG and RAICHLE concur.

. 10 U.S.C. §§ 920, 921, 928, 934 (1988).

. 10 U.S.C. § 832 (1988).

. 10 U.S.C. § 839(a) (1988).

. We cite the 1994 edition of the United States Code here. However, 18 U.S.C. § 3585 was part of the Sentencing Reform Act of 1984, Pub.L. 98-473 § 212(a)(2), 98 Stat. 2001 (1984). It has not been amended.

. 18 U.S.C. § 3568, repealed by Sentencing Reform Act of 1984, Pub.L. 98-473 § 203(a), 98 Stat. 1976 (1984).

. 10 U.S.C. § 856 (1988).