. **UNITED STATES**

v.

**Airman First Class Anthony M. LORENC, FR 141–70–3332, United States Air Force.**

**ACM 28597.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 15 March 1990.

Decided 17 Jan. 1991.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair, Major Ronald G. Morgan and Captain Darla G. Orndorff.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Colonel Robert E. Giovagnoni; Major Brenda J. Hollis and Major Paul H. Blackwell, Jr.

Before MURDOCK, KASTL, O'HAIR and MILLS, Appellate Military Judges.

## OPINION OF THE COURT

KASTL, Senior Judge:

The issue in this case is the correctness of the military judge's observation that— given the appellant's sweeping denial of drug use—urinalysis results concerning methelenedioxy methamphetamine (MDMA) were sufficiently reliable to be admissible in rebuttal. We find no error and affirm.

### Summary of Proceedings

Despite his pleas, Airman First Class Lorenc was found guilty at a general court-martial with members of use and distribution of MDMA. This is the designer drug known as ecstasy, a Schedule I controlled substance.[1] His approved sentence is a bad conduct discharge, confinement for six months, total forfeitures, and reduction to airman basic.

An airman named Roberts confessed to use and distribution of ecstasy. He implicated Lorenc and others. After Office of Special Investigations (OSI) agents interviewed Lorenc, he sought legal counsel. Lorenc refused to consent to a urinalysis, and his commander authorized a probable cause search.

Lorenc's urine sample was sent to the drug testing facility at Brooks Air Force Base, Texas. Since that lab is not equipped to test for ecstasy, the sample was routed to the Brooks Epidemiology Lab. This latter facility is not certified by the Department of Defense (DOD) for drug testing. At the epidemiology lab, Lorenc's urine tested positive for the drug itself, not a metabolite. There are no DOD guidelines as to what a chemical analysis of ecstasy must show before results may be used as evidence.

At Lorenc's court-martial, Roberts testified that the two had used ecstasy every weekend for three months. He further testified that he saw Lorenc send by Federal Express some ecstasy wrapped in paper and tin foil.

At trial, the military judge initially granted a defense motion to suppress the urinalysis results as lacking reliability. The defense then moved in limine to prevent the prosecution from presenting these urinalysis results in rebuttal, should Lorenc take

---

1. *See United States v. Reichenbach,* 29 M.J. 128    (C.M.A.1989).

the stand to deny using ecstasy. The military judge opined that the results might well constitute valid rebuttal[2].

### Analysis

It was said of the poet Gertrude Stein that near the end of her life, she would constantly ask, "What is the answer, what is the answer?" At her death, she supposedly amended her plea to: "What is the question?" Today, we face such a dilemma. The parties differ radically as to the precise question before this Court.

The appellant argues that the issue is whether the judge erred in denying a motion in limine to bar an "unreliable urinalysis." Contrariwise, the Government insists that question is not before us—the military judge (at best) gave an advisory opinion suggesting various options *if* Lorenc testified. Lorenc did not, says the Government, so no valid issue remains for appellate review.

■ The recent decision of *United States v. Sutton*, 31 M.J. 11, 13 (C.M.A. 1990) resolves this initial matter. *Sutton* announced that courts-martial tried *after 6 September 1990* would be controlled by *Luce v. United States*[3] and its progeny. *Sutton*, 31 M.J. at 18. In *Luce*, a majority of Supreme Court justices concluded that *a defendant must testify to raise and preserve for review a ruling denying his motion in limine. Sutton*, 31 M.J. at 13–14; *see also United States v. Cofield*, 11 M.J. 422 (1981).

In contrast, this case was tried BEFORE *Sutton's* implementation date of 6 September 1990. Thus, despite Lorenc's failure to testify, the issue is preserved for appeal. We will therefore weigh the merits of his assertion.[4]

■ Having safely navigated past the threshold matter addressed above, we face Lorenc's argument that *United States v. Arguello*, 29 M.J. 198 (C.M.A.1989), is outcome-determinative. In *Arguello*, the Court of Military Appeals held that a so-called "negative urinalysis result" (one below the DOD cutoff and therefore technically "negative") enjoyed no legal stature to rebut an accused's claim that he was drug-free.

■ *Arguello* is immaterial here. Expert testimony at trial indicated that DOD Directive 1010.1, *Drug Abuse Testing Program*, (28 December 1984) establishes cutoff levels for six named substances.[5] We hold that for substances not specifically named—such as ecstasy—the regulation does not shield an accused from prosecution rebuttal. *See generally United States v. Donohue*, 30 M.J. 734 (A.F.C.M.R.1990). *Arguello* offers one unique "safe haven" for an accused, an evidentiary enclave. When dealing with the six named substances, a "negative urinalysis" below the DOD cutoff cannot be used. Beyond these six substances, however, the usual rules of admissibility obtain. Mil.R.Evid. 401–403. We therefore conclude that the military judge did not err in his ruling concerning the availability of the urinalysis results in rebuttal.

■ Lorenc also challenges the lab results as unreliable: (a) the lab was not certified; and (b) it tested for ecstasy itself, not its metabolite. These considerations go

---

**2.** The trial counsel warned that the military judge was being asked to make a speculative ruling. The following colloquy occurred:

> TC: Again, Your Honor, you're not making your ruling on speculating what they [the defense] may or may not do; that's *totally up to the defense to make an election* as to what they want to do—
> MJ: Yes.
> TC: —and they make such an election at their peril depending on what you may determine *at a later time?*
> MJ: That's correct.

(Emphasis supplied). At this point, the subject was dropped; it never surfaced again.

**3.** *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

**4.** Appellants whose cases were tried before 6 September 1990 can be said to enjoy a "one time good deal." We caution that after the operative day of 6 September 1990, *Luce* applies and future appellants will be out of court unless they take the stand. *See Sutton*, 31 M.J. at 18.

**5.** The substances named are marijuana, cocaine, so-called PCP, barbituates, opiates, and amphetamines.

to weight, not admissibility. We accordingly find the military judge did not err in his observation that the data was available for use in rebuttal. *United States v. Cleveland,* 29 M.J. 361, 363 (C.M.A.1990); *United States v. Joyner,* 29 M.J. 209, 212 (C.M.A.1989); *United States v. Trimper,* 28 M.J. 460 (C.M.A.1989) [6].

### Sufficiency of Evidence as to Distribution

■ Lorenc further argues the evidence fails to show him guilty of distribution. Roberts' testimony is the key. He testified that he was convinced he'd seen Lorenc put ecstasy into an envelope and mail it via Federal Express. Although he was positive of that much, he did not know the recipient or the address to which it was sent.

We affirm, convinced of both the legal and factual sufficiency of this evidence. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). Moreover, Lorenc's conduct squares with the definition of "distribution" in the Manual for Courts–Martial:

> (3) Distribute. "Distribute" means to deliver to the possession of another. "Deliver" means the actual, constructive or attempted transfer of an item, whether or not there exists an agency relationship.

MCM, Part IV, para. 37c(3) [7].

We are confident that the appellant's conduct of dispatching ecstasy via Federal Express amounts to distribution under the Manual definition. *See State v. McHorse,* 85 N.M. 753, 517 P.2d 75 (Ct.App.1973); *see also United States v. Earhart,* 14 M.J. 511, 516 (A.F.C.M.R.1982). We see no suggestion that Lorenc was simply sidestepping immediate danger by mailing the ecstasy back to himself.

### Other Matters

The other issue raised by the appellant is resolved against him. *United States v. Tipton,* 16 M.J. 283 (C.M.A.1983). *See also United States v. Harper,* 22 M.J. 157, 164 (C.M.A.1986); *United States v. Eck,* 10 M.J. 501 (A.F.C.M.R.1980); *United States v. Gudel,* 17 M.J. 1075, 1077 (A.F.C.M.R. 1984).

We further note that the trial counsel failed to list the court members, both absent and present. We solicit all concerned to take a few seconds to insure that all detailed members are accounted for. *United States v. Hayes,* 24 M.J. 786, 792 (A.C. M.R.1987); MCM, App. 8, Sec. II at A8–10; Air Force Regulation 111–1, *Military Justice Guide,* para. 14–9 (30 September 1988); DA Pam 27–9 *Military Judge's Benchbook,* para. 2–23 (May 1982). *See also United States v. Staton,* 48 C.M.R. 250 (A.C.M.R. 1973).

The findings of guilty and the sentence are correct in law and fact and, upon the basis of the entire record, are

AFFIRMED.

Senior Judge MURDOCK and Judge MILLS concur.

Senior Judge O'HAIR did not participate.

---

6. In *United States v. Trimper,* 28 M.J. 460 (C.M.A.1989), the Court noted that "... even an exclusionary rule which has a constitutional basis cannot be manipulated by a defendant to permit him to commit perjury with impunity." *Trimper,* 28 M.J. at 466–467. *See also United States v. Berry,* 30 M.J. 134, 135 (C.M.A.1990).

7. "Distribute" or "distribution" are not generally considered narrowly-defined words of legalese. *See* 27 C.J.S. Distribution 614 (1959).