UNITED STATES

v.

**Technical Sergeant Kenneth WALKER, FR225–86–0085, United States Air Force.**

**ACM 29820.**

U.S. Air Force Court of Military Review.

3 Sept. 1993.

Appellate Counsel for the Appellant: Colonel Terry J. Woodhouse, Major Alice M. Kottmyer, Major Mary C. Yastishock, and Captain Ursula P. Moul.

Appellate Counsel for the United States: Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, and Captain David C. Wesley.

Before JOHNSON, GRUNICK, and YOUNG, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Judge:

Our original opinion in this case was unpublished (ACM 29820, 26 August 1993). That opinion is hereby withdrawn.

A military judge sitting as a general court-martial convicted appellant of using and distributing marijuana, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a, and communicating threats to injure two persons, in violation of Article 134, 10 U.S.C. § 934. Appellant was acquitted of soliciting another to commit murder. The approved sentence consists of a bad-conduct discharge, confinement and forfeiture of $150 pay per month for 18 months, and reduction to airman basic (E–1). Appellant asserts that the military judge improperly denied his motion to dismiss the charges because the Security Police listened to telephone calls between appellant and his attorneys, restricted the number and length of such calls, and kept appellant in handcuffs during such calls; that a laboratory report was inadmissible hearsay and not properly authenticated; that the military judge committed prejudicial error by refusing to restrict trial counsel's cross examination of the accused; and, that the evidence is factually insufficient to support the findings of guilty. We find the assigned errors to be without merit and affirm.

## I. FACTS

On 28 May 1991, special agents of the Air Force Office of Special Investigations (AFOSI) apprehended Lance Corporal Mitchell (USMC) for possessing cocaine and carrying a concealed pistol under his car seat. Mitchell confessed and agreed to assist the AFOSI in further drug investigations. The following day, Mitchell advised AFOSI agents that he had discussed with appellant the possibility of purchasing marijuana from him later that evening. After searching Mitchell and providing him funds with which to purchase the marijuana, AFOSI agents followed him to an off base apartment. There, Mitchell smoked marijuana with, and purchased marijuana from, the accused. During their meeting, appellant warned Mitchell that if he were an undercover agent, appellant would put a hole in his head. When Mitchell left the apartment, appellant accompanied him to the parking lot, where AFOSI agents saw him wearing red shorts.

In late June 1991, after being apprehended by AFOSI agents, appellant talked with Ms. Jacobs, a former coworker at appellant's off-duty place of employment. He told her he had been "popped" by AFOSI for drug offenses, admitted he had committed the acts, and warned that if she had turned him in, he would kill her.

## II. INTERFERENCE WITH ATTORNEY–CLIENT RELATIONSHIP

On 26 August 1991, appellant was ordered into pretrial confinement by his commander. During his confinement, appellant was treated as a maximum security prisoner. He was permitted to make telephone calls to, and receive calls from, his

attorneys on extensions of telephone lines running directly to the security police desk. Unbeknownst to appellant or his attorneys until 17 October 1991, a tape machine continuously and automatically recorded the contents of every call from these three phone lines. While on the telephone, appellant was handcuffed and accompanied by security police escorts, who could overhear appellant's statements to his attorneys. The number and length of his calls were severely restricted. Appellant was aware that the escorts were within earshot during his telephone calls, but never complained about it. At his arraignment, appellant moved to dismiss all charges and specifications alleging that the recording and overhearing by escorts of his attorney-client privileged telephone calls violated the accused's rights to "confidentiality and attorney client privilege" under Mil.R.Evid. 502 and the Fifth and Sixth Amendments to the United States Constitution. After making extensive findings of fact, the military judge concluded that since no one had ever listened to the contents of appellant's tape-recorded conversations with his counsel, appellant suffered no prejudice. However, the military judge did find that the security police escorts' ability to overhear appellant's conversations with his attorney prejudicially impeded the free flow of communications between attorney and client. Rather than dismiss the charges, the military judge ordered the following remedies:

1. So long as the accused remains in pretrial confinement, when he desires to have telephone conversations with his counsel he shall be provided a telephone free of any electronic eavesdropping devices.

2. The procedure of monitoring telephone conversations between the accused and his counsel by members of the confinement or corrections staff, by any means whatsoever, shall cease and desist.

3. Within 24 hours, all security police personnel are to be ordered that, if they participated in the monitoring of the accused's telephone conversations with his attorney, they are to disclose what they heard, if anything, to no one. This could probably be most appropriately done during shift change. The next one, I understand is at 1600 hours. I want to make it clear this is to be in the form of an order from an appropriate officer or NCO. I would prefer it was an order from the commander.

4. Today, appropriate confinement and supervisory personnel will conduct a review of the accused's conduct while in pretrial confinement these past two months to determine whether his treatment as a maximum security prisoner is still warranted. Within 24 hours of that review, a written report of that review, to include conclusions and disposition, will be provided trial counsel for inclusion in the record as an allied paper. A copy will be provided to the defense team.

5. Unless the defense requests they be preserved, the tape-recordings currently with the security police evidence custodian are to be erased immediately and a certificate provided to this court within 24 hours verifying such has been accomplished. The certificate will also be included as an allied paper, and a copy provided the defense.

6. Upon defense request, these proceedings will be delayed to provide the defense adequate time to prepare their case unencumbered by an intrusions into their privileged communications.

At the request of the defense, however, the military judge amended his order to preserve the recordings until all appellate measures are exhausted and granted the defense access to the tapes and a tape player on which to listen to them. He further granted the defense a delay until 5 November, later extended until 16 December 1991, to prepare its case unencumbered by the limitations and intrusions on attorney-client communications. In his assignment of error, appellant no longer separately asserts the recording of his phone calls was prejudicial error. However, since his brief suggests that the military judge's findings in this matter were erroneous, we will review them as well.

The Sixth Amendment to the U.S. Constitution provides that an "accused shall enjoy the right . . . to have the assistance of counsel for his defense." Government interference with an accused's right to counsel may require remedial action, but that does not necessarily require the dismissal of charges. "Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." *United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564, 568 (1981). Federal Courts, citing the Supreme Court analysis in *Weatherford v. Bursey*, 429 U.S. 545, 554, 97 S.Ct. 837, 843, 51 L.Ed.2d 30 (1977), have established a four-part test to use in analyzing allegations that government intrusions amounted to violations of the Sixth Amendment right to counsel: (1) Was evidence used at trial by the government produced directly or indirectly by the intrusion? (2) Was the government intrusion intentional? (3) Did the prosecution receive otherwise confidential information about trial preparations or defense strategy as a result of the intrusion? and (4) Were the overheard conversations and other information used in any other way to the substantial detriment of the defendant? *United States v. Kelly*, 790 F.2d 130, 137 (D.C.Cir.1986); *United States v. Brugman*, 655 F.2d 540, 546 (4th Cir.1981).

With regard to the tape recordings, we answer each question of the *Weatherford* test in the negative. Although the tape recordings of appellant's phone calls were intentionally made, the government intrusion into the attorney-client relationship appears to have been unintentional; the telephone lines were recorded routinely to preserve details of emergency calls to the desk sergeant, not to eavesdrop on appellant. Since no one listened to the tapes, the prosecution could not have profited in any way from the intrusion. The defense had access to the tapes but has made no claim of specific prejudice.

Analysis of the security police escorts overhearing appellant's end of telephone calls with his attorney renders similar results. Even assuming that the intrusion was intentional, since none of the information overheard was ever conveyed to the prosecution or used in the investigation, the prejudice to appellant appears to be limited to his feeling that he was unable to talk freely with his attorneys on the telephone. The military judge adequately remedied that problem by ordering the elimination of the intrusions and by providing the defense substantially more time to prepare for trial. We conclude appellant was not denied the effective assistance of counsel and had a fair trial.

### III. THE LABORATORY REPORT

Appellant next argues that he was substantially prejudiced by the introduction into evidence, over defense objection, of a crime laboratory report certifying the substance the AFOSI received from Mitchell as cannabis. Special Agent Vidas, the AFOSI evidence custodian, testified that he received a green leafy substance from Mitchell on 29 May 1991 and secured it in the evidence locker. In July, Special Agent Vidas personally took the evidence to the Florida Department of Law Enforcement Crime Laboratory in Tampa, Florida. This forensic laboratory had been certified for AFOSI as using proper scientific procedures to test materials, and was the main forensic laboratory used by this AFOSI detachment. The lab report cited both the name of appellant and referenced the appropriate AFOSI report of investigation. The government offered the exhibit as a business record under Mil.R.Evid. 803(6). Appellant argued at trial and on appeal that the lab report is hearsay and without proper authentication because the government failed to provide any evidence of the business procedures of the crime lab or that the lab report was kept in the course of the laboratory's business.

The military judge properly admitted laboratory report into evidence as a record of regularly conducted activity. Mil.R.Evid. 803(6) requires evidence sufficient to establish the trustworthiness of the document and to prove that it was prepared in the

normal course of business. It is not necessary that the person who actually prepared the records testify, nor that the document be prepared by the activity that has custody of it, so long as other circumstantial evidence supports its trustworthiness. *United States v. Cordero*, 21 M.J. 714 (A.F.C.M.R.1985); *United States v. Hawkins*, 905 F.2d 1489 (11th Cir.1990), *cert. denied*, 498 U.S. 1038, 111 S.Ct. 707, 112 L.Ed.2d 696 (1991). Special Agent Vidas's testimony fully establishes the trustworthiness of the laboratory report.

## IV. MOTION TO LIMIT CROSS EXAMINATION OF ACCUSED

 Mitchell testified that during the drug transactions appellant was wearing red shorts, took a marijuana "joint" out of a pocket of these shorts, and later put the $20 purchase money in the same pocket. In an attempt to impeach Mitchell's testimony, the defense sought to have appellant testify for the limited purpose of identifying a pair of red shorts as those he wore on the night in question to show that the shorts were pocketless. The defense asked the military judge to prevent the prosecution from questioning appellant about the marijuana transactions on 29 May 1991 or anything else, other than the shorts. The military judge denied the motion *in limine;* appellant did not testify. Appellant now claims that by denying the motion, the military judge prevented appellant from presenting his defense, apparently because appellant was unwilling to testify if he had to face cross examination about anything except his red shorts. By failing to take the stand, appellant waived preservation of this issue on appeal. *United States v. Lorenc*, 32 M.J. 660, 662 (A.F.C.M.R.1991); *United States v. Sutton*, 31 M.J. 11 (C.M.A.1990); *Luce v. United States*, 469 U.S. 38, 43, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984).

## V. CONCLUSION

After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

We conclude that the findings and sentence are correct in law and fact, the sentence is not inappropriate, and no error prejudicial to the substantial rights of appellant was committed. Articles 59(a), 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Senior Judge JOHNSON and Judge GRUNICK concur.