**UNITED STATES, Appellee,**

v.

**Rickie L. HILL, Sergeant, U.S. Air Force, Appellant.**

**No. 97–0637.**
**Crim.App. No. 31798.**

U.S. Court of Appeals for the Armed Forces.

Argued June 2, 1998.

Decided Sept. 29, 1998.

For Appellant: *Major Carol L. Hubbard* (argued); *Colonel Douglas H. Kohrt* (on

brief); *Lieutenant Colonel Kim L. Sheffield* and *Major Ormond R. Fodrea.*

For Appellee: *Captain Steven D. Dubriske* (argued); *Colonel Brenda J. Hollis* and *Lieutenant Colonel Michael J. Breslin* (on brief); *Major Allen G. Erickson.*

### Opinion of the Court

EFFRON, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer members of willful disobedience of a lawful order of a noncommissioned officer and attempted burglary, in violation of Articles 91 and 80, Uniform Code of Military Justice, 10 USC §§ 891 and 880, respectively. He was sentenced in 1995 to a bad-conduct discharge, confinement for 6 months, and reduction to E–1. The convening authority approved these results, and the Court of Criminal Appeals affirmed the findings and sentence. 46 MJ 567 (1997).

This Court granted review of the following issues:

### I

WHETHER THE GOVERNMENT'S CASE IS LEGALLY SUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR ATTEMPTED BURGLARY (CHARGE III AND ITS SPECIFICATION).

### II

WHETHER APPELLANT'S CONVICTION FOR DISOBEYING THE LAWFUL ORDER OF AN NCO MUST BE SET ASIDE FOR LEGAL INSUFFICIENCY.

A. WHETHER SSGT LINDLEY'S NO–CONTACT ORDER WAS UNLAWFUL AS NOT IN FURTHERANCE OF LEGITIMATE MILITARY NEEDS; AS CONTRARY TO ESTABLISHED LAW; AS BEING OUTSIDE THE SCOPE OF HIS AUTHORITY; AND AS BEING INDEFINITE IN DURATION.

B. WHETHER THE EVIDENCE IS LEGALLY SUFFICIENT TO PROVE THAT APPELLANT HAD A DUTY TO OBEY SSGT LINDLEY'S NO–CONTACT ORDER.

We affirm the decision of the Court of Criminal Appeals on the grounds that there is sufficient evidence of record to support appellant's conviction for attempted burglary and that appellant was obligated as a matter of law to obey the no-contact order.

### FACTS

Appellant's 5–year extramarital relationship with Staff Sergeant (SSgt) S began to deteriorate in 1994, culminating in several heated arguments in January 1995. Following an argument with appellant on January 23, 1995, SSgt S reported the incident to her first sergeant and the security police. SSgt S signed a written statement in which she disclosed her 5–year relationship with appellant and alleged that appellant had assaulted and threatened her on various occasions over the years, including earlier that morning.

Later that day, SSgt Lindley, a security police investigator, told appellant's supervisor, Second Lieutenant (2Lt) Raines, to bring appellant to the security police office for questioning. During the interview, appellant denied SSgt S's allegations concerning the assaults and threats, but he admitted to their relationship. At the end of the interview, in the presence of 2Lt Raines, SSgt Lindley ordered appellant "to not be in contact with [SSgt S] . . . not to contact her at home, her duty section or to be within one hundred feet of her." At that time, appellant stated that he "understood" SSgt Lindley's "authority to give" the order. 2Lt Raines then told SSgt Lindley that appellant's command would also issue the no-contact order.

Five days later, SSgt S called the security police to her on-base residence because a patio light that she had recently replaced was not working. When Technical Sergeant (TSgt) Pugh, a security policeman, responded to the call, he discovered appellant at SSgt S's patio door. TSgt Pugh ordered appellant to "freeze" and apprehended him. At the time, appellant was wearing gloves and carrying a pellet gun in the lining of his jacket.

After searching appellant and placing him in the police car, TSgt Pugh returned to SSgt S's porch and retrieved the following items which were on the ground under the bathroom window: a window screen, a flashlight, and four screwdrivers. In addition, he retrieved a sheathed hunting knife, which had fallen from appellant's person during the initial pat-down.

Appellant's car was located on a nearby street and impounded by the Air Force Office of Special Investigations (OSI). Inside the car, OSI found the original packaging and plastic wrap for the hunting knife and pellet gun. Receipts found in the car indicated that the items had been purchased earlier that evening.

## DISCUSSION—ISSUE I

Appellant was charged with burglarizing SSgt S's house by unlawfully breaking and entering with the intent to commit assault therein, in violation of Article 129, UCMJ, 10 USC § 929. He was convicted of the lesser-included offense of attempted burglary, and now challenges the legal sufficiency of that conviction.

■ In deciding whether the evidence is legally sufficient to sustain appellant's conviction for attempted burglary, we must "view[ ] the evidence in the light most favorable to the prosecution" and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Paragraphs 4b and 55b of Part IV of the Manual for Courts–Martial, United States (1995 ed.), set forth the elements of attempted burglary as follows:

(1) That the accused did a certain overt act;

(2) That the act was done with the specific intent to commit a certain offense under the code [to unlawfully break and enter SSgt S's dwelling house in the nighttime with the intent to commit an assault];

(3) That the act amounted to more than mere preparation; and

(4) That the act apparently tended to effect the commission of the intended offense.

■ We hold that the Government presented sufficient evidence on each element of attempted burglary to sustain appellant's conviction under *Jackson v. Virginia, supra.* First, TSgt Pugh's discovery of appellant by SSgt S's patio door, the presence of his tools and flashlight, and the cuts on the window frame and screen indicated that appellant had tried to enter SSgt S's house, which constituted an "overt act" in furtherance of the crime. Second, appellant's "specific intent" to commit burglary and assault could be inferred from his uninvited presence at night at SSgt S's back porch, as well as the physical evidence that he tried to enter the house through the window (which shows his intent to break and enter) and his possession of the hunting knife and pellet gun (which shows his intent to commit an assault). Third, appellant's conduct in furtherance of the crime was "more than mere preparation." He was found outside SSgt S's house in possession of burglary tools and weapons, and the marks and cuts on the window screen indicated that he had tried to enter the house through the window. Finally, appellant's "act" (attempting to break into SSgt S's house through the window) "apparently tended to effect the commission of the intended offense" (burglary of SSgt S's residence).

■ At trial, appellant contended that he was "set-up" by SSgt S, who lured him into violating the no-contact order to obtain revenge because appellant refused to leave his wife. Contradicting SSgt S's version of the events, appellant testified that SSgt S had invited him over to her house and, despite the no-contact order, he had finally agreed to go there. Defense counsel asked SSgt S on cross-examination whether she had invited appellant to visit that evening, to which she replied that she had not, but she "probably" expected him to visit later. Appellant explained that he had purchased the knife and pellet gun (but no pellets) as protection against some dogs that lived near property that he had purchased for development and

that he had visited earlier that evening. He also explained that he had used the screwdrivers the previous week to repair SSgt S's kitchen door and had left his tools at SSgt S's house.

Appellant's argument on appeal, paralleling the argument of the dissent below, is based on factual, rather than legal, sufficiency. Appellant points to the weaknesses in the Government's case—for example, appellant's "puzzling" choice to enter SSgt S's house through the smallest window, the "coincidence" that he would use the same tools that he used one week earlier to repair SSgt S's door, SSgt S's grudging acknowledgment that she "guessed" appellant would come over on that night, and other "inconsistencies" in the evidence—and asks this Court to reweigh the evidence in light of his theory that he was "set-up" by SSgt S, a theory that was presented to and rejected by the factfinders at trial.

The unique appellate power to review a case for factual sufficiency is vested solely in the Courts of Criminal Appeals. *See* Art. 66(c), UCMJ, 10 USC § 866(c) (1994). Our review, however, is limited to questions of law. *See* Art. 67(c), UCMJ, 10 USC § 867(c) (1994). Because appellant's claim before us concerns only the legal sufficiency of the evidence, we must reject his invitation to engage in a factual review of the record. Considering the evidence in the light most favorable to the Government, as we are required to do under *Jackson v. Virginia, supra*, we conclude that there is sufficient evidence in the record to sustain appellant's conviction for attempted burglary.

### DISCUSSION—ISSUE II

Because appellant's chain of command never directly ordered him not to contact SSgt S, appellant was charged with disobeying the order issued by a noncommissioned officer (SSgt Lindley). At the initial session under Article 39(a), UCMJ, 10 USC § 839(a), the defense moved to dismiss this charge on the ground that the order was unlawful because it was not issued by appellant's chain of command and it was not given under exigent circumstances, such as during "the immediacy of the crime scene."

Paragraph 15b(2), Part IV, Manual, *supra*, lists the elements of a charge for disobeying a lawful order of a noncommissioned officer (NCO), in violation of Article 91, as follows:

(1) That the accused was a[n] ... enlisted member;

(2) That the accused received a certain lawful order from a certain ... noncommissioned ... officer;

(3) That the accused then knew that the person giving the order was a ... noncommissioned ... officer;

(4) That the accused had a duty to obey the order; and

(5) That the accused willfully disobeyed the order.

■ Appellant argues that the no-contact order in this case was not lawful because SSgt Lindley, a security policeman who was not in appellant's chain of command, did not have the authority to issue a no-contact order that was not directly related to a police investigation. We hold that the no-contact order in this case was lawfully issued by SSgt Lindley and that appellant had a duty to obey it.

Although we have not addressed the scope of a security policeman's authority to issue a no-contact order, paragraph 15c(1) of the Manual specifically states that a "superior-subordinate relationship" is not required for an order to be lawful for purposes of Article 91. The situation presented in this case—where the no-contact order was issued in the presence and with the knowledge of the accused's chain of command *—does not raise the issue of whether a security policeman has the authority to issue a no-contact order, without the knowledge of the command, in

---

* On January 23, 1995, SSgt S reported her relationship with appellant, their recent arguments, and his threats to her first sergeant, who then contacted the security police and appellant's command. When appellant was interviewed by the security police, he was accompanied by his supervising officer (2Lt Raines), who heard SSgt Lindley issue the no-contact order and stated that appellant's chain of command would reissue it. At the conclusion of the interview, appellant stated that he understood the scope of the order and SSgt Lindley's authority to issue it.

circumstances other than amid a fray or disorder. Insofar as the no-contact order addressed a command concern, the circumstances of its issuance indicate that SSgt Lindley was acting with the knowledge and sanction of appellant's command. With respect to the content of the order, it served the valid military purposes of maintaining good order and discipline within the military community at Columbus AFB and of protecting SSgt S from appellant while her allegations were being investigated.

Appellant was charged with violating the no-contact order on January 28, 1995, five days after it was issued, by attempting to enter SSgt S's residence, as discussed with respect to Issue I. Based on his own testimony, appellant understood the scope of the order and believed it to be in effect when he went to SSgt S's house on January 28. Even if appellant had any doubt regarding the scope or continued force of the order, he took no action during the time between its issuance and his violation of it to clarify the vitality of the order or challenge its applicability to conduct that may be constitutionally protected. We, therefore, reject appellant's challenges to the order.

## DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges SULLIVAN, CRAWFORD, and GIERKE concur.