UNITED STATES

v.

**Senior Airman Robert W. PINSON III, United States Air Force.**

**ACM 32963.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 7 April 1997.

Decided 29 Jan. 2001.

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt, Lieutenant Colonel Kim L. Sheffield, and Major Carol L. Hubbard.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Captain Steven D. Dubriske.

Before SPISAK, Senior Judge, STARR, and HEAD, Appellate Military Judges.

## OPINION OF THE COURT

SPISAK, Senior Judge:

This is the appellant's second court-martial. In 1996 he was convicted of a single specification of assault. Following that trial the appellant was charged and now stands convicted of disobeying lawful orders, subornation of perjury, communicating threats, adultery, and assault. Articles 92, 134, 128, UCMJ, 10 U.S.C. §§ 892, 934, 928. His approved sentence consists of a bad-conduct discharge, confinement for 3 years, and reduction to E–1.

The appellant complains that the military judge erred by denying his motions for appropriate relief, suppression of his out of court statements, and the presence of a witness at trial, as well as motions to dismiss all charges, or at least Charge I (disobeying lawful orders), and to compel a new Article 32 investigation and discovery. He also asks that we grant credit for time served in confinement at the hands of the Icelandic police during their investigation of related charges. We have carefully considered each of these complaints and grant credit for one day of pretrial confinement.

## I. PRETRIAL CONFINEMENT CREDIT

■ The appellant was confined by Icelandic authorities on 2 April 1996 and released the following day. He now contends that he is entitled to a day of credit for this period of confinement. *United States v. Allen*, 17 M.J. 126 (C.M.A.1984). We have previously held that when a prisoner is held in pretrial confinement by state officials after the commission of an offense, he must receive credit against his court-martial sentence, *unless* credit was previously applied to a state sentence. *United States v. Murray*, 43 M.J. 507 (A.F.Ct.Crim.App.1995). However, the question of whether such credit applies when the member is held in pretrial confinement by a foreign government has not been addressed by the Court of Appeals for the Armed Forces or any of the service courts. After reviewing the case law and applicable statutes, we conclude that the *Allen* and *Murray* rules must be applied to confinement by a foreign government.

*Allen* requires day-for-day credit for time spent in military pretrial confinement. The court in *Allen* reached this conclusion by applying the 1968 version of a Department of Defense Instruction that directs the services to follow procedures established by the Department of Justice (DOJ) when computing sentences. Department of Defense Directive (DODD) 1325.4, *Confinement of Military Prisoners and Administration of Correctional Programs and Facilities* (7 Oct 1968). Because the Department of Justice procedures granted credit for pretrial confinement, the court held that the services must do likewise.

In *Murray*, we concluded that the same logic applied when pretrial confinement was served in a civilian facility. Because the DODD had not been changed and continued to direct that we follow the DOJ procedures, our decision in *Murray* was based on the mandate of 18 U.S.C. § 3585(b). That stat-

ute governs computation of federal confinement sentences and states:

> **Credit for prior custody.** A defendant **shall** be given credit toward the service of a term of imprisonment of **any time he has spent in official detention** prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

(Emphasis added).

Department of Defense Instruction 1325.7, *Administration of Military Correctional Facilities and Clemency and Parole Authority*, ¶ 6.3.1.5 (17 Dec 1999), contains the same language that the court interpreted in *Allen.* Thus, in accordance with our senior court's guidance in *Allen,* we must continue to follow the dictates of 18 U.S.C. § 3585(b).

■ "Judicial inquiry into the meaning of an unambiguous statute begins and ends with the plain language of the statute." *Murray,* 43 M.J. at 514 (citing *Adams Fruit Co. v. Barrett,* 494 U.S. 638, 642, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990)); *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); *Greyhound Corp. v. Mt. Hood Stages,* 437 U.S. 322, 330, 98 S.Ct. 2370, 57 L.Ed.2d 239 (1978); *United States v. Maxwell,* 42 M.J. 568, 580 (A.F.Ct.Crim.App. 1995), *aff'd in part and rev'd in part,* 45 M.J. 406 (1996). The statute in question is clear. It does not discriminate based on the sovereign responsible for confinement. Rather, a federal prisoner subjected to pretrial confinement for the offense on which sentence is imposed, gets credit against his pending federal sentence unless credit has already been applied in another state or federal case. *Murray,* 43 M.J. at 514. The statute does not limit this credit to time spent in facilities within the United States. Instead, it references "official detention" served "as a result of the offense for which the sentence was imposed...." We conclude that credit must be given for pretrial confinement served at the hands of a foreign government if the requirements of 18 U.S.C. § 3585(b) are otherwise met. *See United States v. El–Jassem,* 819 F.Supp. 166, 182 (E.D.N.Y.1993) (credit applied against sentence for 451 days spent in Italian prison before extradition to the United States).

## II. ATTORNEY/CLIENT PRIVILEGE

Prior to the appellant's first trial in February 1996, his alleged victim, Ms. Helgadottir, provided a "voluntary statement" in which she asserted that her earlier allegations were false and that the appellant had only struck her in self-defense. At trial, she testified in accordance with her revised statement and also informed the court that the property the appellant was charged with damaging was his, not hers. As a result, the appellant was acquitted of one charge, another was dismissed, and he was convicted of a single specification of assault. However, after trial, Ms. Helgadottir again changed her story.

About a month after his first trial, Ms. Helgadottir informed Icelandic police officials that the appellant had procured her perjured testimony by threatening to harm or kill her. To support her allegations, Ms. Helgadottir provided several letters from appellant, two of which contained clear, although unspecified threats. This information and the letters were shared with the Naval Criminal Investigative Service (NCIS).

Agents from NCIS obtained authorization to search the appellant's quarters where they found numerous documents and notebooks containing his writing and comments about Ms. Helgadottir and his earlier trial. The agents seized these documents and notebooks. When trial counsel began to review the documents in preparation for trial, they found one that appeared to contain materials related to his clemency submission for his first trial. Believing that the documents might be protected by the attorney/client privilege, trial counsel immediately returned the documents to the NCIS agents with instructions that they did not want to review them. The next day, trial defense counsel reviewed the documents and found several which they believed to contain privileged information.

■ An accused is entitled to the assistance of counsel in his defense. *United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Where the government interferes with that right, the courts must "identify and then neutralize the taint by tailoring relief appropriate in the circumstances." *Id.* That does not necessarily mean that we must dismiss the charges. *United States v. Walker*, 38 M.J. 678, 681 (A.F.C.M.R.1993). Rather, we must first determine how and why the right to counsel was infringed and what harm the appellant suffered. To do so, we ask: (1) Was evidence used at trial by the government produced directly or indirectly by government intrusion? (2) Was the government intrusion intentional? (3) Did the prosecution receive otherwise confidential information about trial preparations or defense strategy as a result of the intrusion? and, (4) Was the information used in any other way to the substantial detriment of the appellant? *Id.* (citing *United States v. Kelly*, 790 F.2d 130, 137 (D.C.Cir.1986) and *United States v. Brugman*, 655 F.2d 540, 546 (4th Cir.1981)).

■ No privileged document was used as direct evidence in the appellant's court-martial. Additionally, the military judge provided detailed findings of fact in which he concluded: The privileged documents were inadvertently obtained during a lawful search of the appellant's quarters. Only one investigator, an Icelandic police officer, read the documents for content and he found nothing of use to his investigation. Further, with the exception of two documents identified as P27 and P28, none of the privileged materials seized were used in furtherance of the investigation. Documents P27 and P28, along with four non-privileged documents were sent to a documents examiner for use as handwriting exemplars. The documents were used only for handwriting comparisons and the contents were neither considered nor revealed to anyone else. Even if the contents had been revealed, the appellant had previously disclosed their contents in his clemency submission, and in complaints to his congressman and the Inspector General.

Based on these facts, we answer all four questions in the negative. The government intentionally came into possession of the materials by lawful means but without recognizing their significance. Therefore, the intrusion was unintentional. No confidential information concerning trial preparation for this court-martial was contained in the documents and the government did not discern any defense strategy from the materials because neither trial counsel nor NCIS investigators reviewed their content. Finally, no use was made of the privileged materials, therefore, no harm could have befallen the appellant. The military judge concluded that the appellant had "not been prejudiced or harmed by the inadvertent seizure of any privileged attorney client information." We agree.

## III. SUPPRESSION OF STATEMENTS

A military judge's ruling on the admission or exclusion of evidence, including rulings on motions to suppress, is reviewed for an abuse of discretion. *United States v. Ayala*, 43 M.J. 296 (1995). We review a military judge's findings of fact under a clearly erroneous standard and his conclusions of law under a de novo standard. *Id.* at 298.

■ The appellant contends that the statements he made to Icelandic police investigators should have been suppressed because of violations of his rights under the Fourth Amendment of the United States Constitution and Article 31, UCMJ, 10 U.S.C. § 831. He also asked for suppression of "all derivative evidence obtained as a result of his apprehension by NCIS or [Icelandic police] investigators on 2 April 1996."

A statement obtained in violation of Article 31(b), UCMJ, may not generally be received into evidence in a trial by court-martial. Article 31(d), UCMJ; *But see* Mil.R.Evid. 304(b). However, such warnings are not required "during an interrogation conducted abroad by officials of a foreign government or their agents unless such interrogation is conducted, instigated, or participated in by military personnel or their agents." Mil. R.Evid. 305(h)(2).

In *United States v. French*, 38 M.J. 420 (C.M.A.1993), our superior court reviewed forty years worth of cases touching on this question and concluded that the analysis used in *United States v. Penn*, 39 C.M.R. 194, 1969 WL 5949 (C.M.A.1969), remains valid. *See also*, *United States v. Moreno*, 36 M.J. 107, 113 (C.M.A.1992); *United States v. Lonetree*, 35 M.J. 396, 403 (C.M.A.1992). In *Penn*, the Court said that

> Article 31 extends to the civilian investigator. . . . (1) [w]hen the scope and character of the cooperative efforts demonstrate "that the two investigations merged into an indivisible entity"; and (2) when the civilian investigator acts "in furtherance of any military investigation, or in any sense as an instrument of the military."

*Penn*, 39 C.M.R. at 199 (citations omitted). The *Penn* analysis "begins with examining the case from the time of the investigation through interrogation rather than from where it was eventually tried." *French*, 38 M.J. at 426. Therefore, we turn to the investigation to determine what involvement the NCIS had with the Icelandic authorities.

Icelandic investigators received Ms. Helgadottir's complaint on 1 April 1996. On 2 April 1996, they opened an investigation into her complaints of threats and assault and went to look for the appellant. They were unable to find him, but notified the NCIS of the allegations. NCIS then asked the appellant to report to their offices. When he did so, the appellant requested defense counsel and refused to talk to the NCIS agents. However, he agreed to talk to the Icelandic authorities who arrested him and transported him to their offices downtown. When the appellant requested Icelandic counsel, he was placed in an Icelandic jail overnight.

That same day, NCIS opened an investigation into the allegation that the appellant suborned Ms. Helgadottir's perjury. An Icelandic investigator was present when the NCIS searched the appellant's quarters, but only as an observer. Although the evidence seized was given to the Icelandic investigators on 3 April 1996, they made no use of it and returned it to the NCIS on 11 April 1996 without making copies.

On 3 April 1996 the appellant was interviewed with Icelandic counsel present. No American investigators were present then or at any of the subsequent interviews between the appellant and the Icelandic investigators. Nor did American investigators request that the Icelandic police ask specific questions or obtain specific information from the appellant. Both agencies helped one another to locate witnesses in accordance with the defense agreement between the two countries.

Under these facts, we agree completely with the military judge's conclusion that the two governments conducted separate investigations and that the Icelandic police were neither agents nor pawns of the NCIS. The military judge neither abused his discretion nor misapplied the law.

## IV. NEW INVESTIGATION UNDER ARTICLE 32, UCMJ

The appellant moves for a new Article 32 investigation claiming that the investigating officer (IO) "failed to provide the convening authority with the information on which to properly decide the disposition of the case"; the Staff Judge Advocate (SJA) improperly requested consideration of information and inclusion of that information in the report; and, the investigation and report were "prejudicially defective" because the investigation contained errors.

We have reviewed the Article 32 investigation and find that although it might have included more detail in some areas, it provided adequate information from which the convening authority might decide whether to refer charges to trial. The IO did repeatedly state that no evidence of self-defense had been presented, which the appellant identifies as one of the errors found in the report. We find no error. These statements merely addressed a potential legal issue and notified the convening authority that, at least at the conclusion of the investigation, none of the available evidence suggested that the charges would be inappropriate or unsupportable. We turn then to what the appellant asserts is the "most disturbing aspect surrounding this Article 32 investigation," the SJA's *ex parte* communication with the IO.

After she had closed her investigation and written her report, the SJA gave the IO a letter asking her to address specific issues. The IO reviewed the letter and decided that her report already adequately addressed the matters requested. Therefore, she made no changes to the report. Nevertheless, the appellant contends that this *ex parte* communication deprived him of a fair and impartial investigation.

On the one hand, the appellant seems to argue that the SJA's letter constituted improper action by a member of the prosecution. On the other hand, he recognizes that the SJA is not a prosecutor. Indeed, during the investigative stages, the SJA is to serve as an impartial advisor to and representative of the convening authority. *United States v. Argo*, 46 M.J. 454, 458 (1997). Thus, it appears that the appellant's complaint is one of unlawful command influence rather than prosecutorial misconduct.

 We review a military judge's findings of fact on issues of unlawful command influence under a clearly-erroneous standard. *Id.* at 457; *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A.1994). We apply a de novo standard of review to the question of command influence arising from those facts. *Id.* The initial burden of raising unlawful command influence lies with the defense. *Ayala*, 43 M.J. at 299. When raised, there is a rebuttable presumption of prejudice. *Wallace*, 39 M.J. at 286. We must be persuaded beyond a reasonable doubt that the findings and sentence have not been affected by the command influence before we will affirm. *United States v. Thomas*, 22 M.J. 388, 394 (C.M.A.1986).

 Here, there is no doubt that the SJA approached the IO and asked that her report address specific issues and include specified matters. However, the mere fact of the contact does not prove that it was unlawful. As our superior court noted in *Argo*, the SJA is the representative of the convening authority. Because the convening authority could request it himself, it is not improper for the SJA to ask the IO to reopen an investigation to address additional matters. *Argo*, 46 M.J. at 458. Here, the SJA was attempting to assure that the convening authority had a complete report the first time around without having to reopen the investigation. Moreover, the letter itself indicates that copies were provided to both defense counsel. While it appears that the SJA's actions were wholly unnecessary-the government representative had made the same requests during the hearing-we find nothing improper in the SJA's attempt to assure the matters were fully discussed in the report.

Moreover, we can find no prejudice to the appellant. It is true that the SJA asked the IO to investigate the unlawfulness of the assault allegations even though that word was left out of the charges. It is also true that the SJA asked the IO to include what opportunity the defense had to address the matter of unlawfulness of the assaults and any objections raised. However, these are matters that should be included in a thorough report of investigation and we see no harm to the appellant in the SJA recommending that the investigation be complete. In fact, we would be very surprised if an IO failed to raise the issue of the missing word during her investigation and in her report. We also find it somewhat disingenuous of the appellant to first complain that the investigation and report are inadequate to provide the convening authority with the information he needed and then argue that it is too complete because the SJA sought to ensure coverage of an obvious legal issue. The military judge did not err in denying the appellant's request for a new Article 32 investigation.

## V. LAWFULNESS OF NO CONTACT ORDER

 Orders are presumed to be lawful. *Unger v. Ziemniak*, 27 M.J. 349, 359 (C.M.A.1989). However, the appellant may rebut this presumption. *United States v. Hughey*, 46 M.J. 152, 154 (1997); *United States v. Hill*, 46 M.J. 567, 570 (A.F.Ct.Crim. App.1997), *aff'd*, 49 M.J. 242 (1998). A lawful order is one that is (1) issued in furtherance of or is connected to military needs, (2) specific as to time and place and definite and certain in what is to be done or omitted, and (3) not otherwise contrary to law or regulation. *United States v. Wine*, 28 M.J. 688, 691 (A.F.C.M.R.1989).

■ The appellant contends that his commanders' orders to have no contact with Ms. Helgadottir were unconstitutional and otherwise unlawful. The two orders in question covered the periods of 8 December 1995 through 6 January 1996 and 5 January 1996 through 4 February 1996. The portion of the order about which he now complains ordered the appellant "to remain at least 1000 ft from the home and person of Ms. Helga Kristin Helgadottir," and gave her address. The orders met the military need of preventing further confrontations between a visiting American and a citizen of the country in which he was stationed. They were specific as to time, place and what he was to avoid and no evidence was presented to indicate that the order was contrary to law or regulation. The appellant did argue that the limitations interfered with his ability to prepare for trial, but, as the military judge noted, this problem was resolved on 21 December 1995 when his commander clarified that the order was not intended to prevent the appellant's defense counsel from contacting witnesses. Under these circumstances we concur with the military judge's conclusion that the orders were lawful.

## VI. MS. HELGADOTTIR'S MEDICAL RECORDS

■ At trial, the defense moved to compel the government to obtain Ms. Helgadottir's medical records for their review. They contended that they could not properly counter the government expert witness's testimony that Ms. Helgadottir suffered from post-traumatic stress disorder as a result of the appellant's actions without reviewing those records. They expected to find evidence of other traumas in her past which might account for her present mental health condition.

R.C.M. 701(a)(2)(B) requires disclosure of "results or reports of physical or mental examinations ... which are within the possession, custody, or control of military authorities ... and are material to the preparation of the defense or are intended for use by the trial counsel as evidence in the prosecution case-in-chief at trial." Evidence that is not under the control of the government may be obtained by subpoena. R.C.M. 703(f)(4)(B). However, the witness who is subpoenaed must be subject to the jurisdiction of the United States. R.C.M. 703(e)(2), Discussion. The requested records were neither in the control of the United States nor under its jurisdiction. Rather, they were held and controlled by Icelandic medical facilities. Moreover, the government did not use any of Ms. Helgadottir's medical records. Instead, they called a psychologist who had interviewed and tested Ms. Helgadottir in preparation for trial. No suggestion is made that these test results or the psychologist's report were withheld from the defense. We find that a military judge does not abuse his discretion by denying a motion to compel discovery of evidence over which the government does not and cannot exercise control.

## VII. REMAINING ISSUES

We have carefully reviewed the appellant's remaining assignments of error and resolve them against the appellant. *United States v. Rappaport,* 19 M.J. 708, 711 (A.F.C.M.R. 1984) (testimony must be relevant and material before a witness will be compelled to appear), *aff'd,* 22 M.J. 445 (1986); *United States v. Hagen,* 25 M.J. 78, 83 (C.M.A.1987) (when alleging vindictive prosecution, the appellant has burden to show he was charged when others were not and for an impermissible reason like race, religion or to interfere with constitutional right).

## VIII. CONCLUSION

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the accused occurred. One day of pretrial confinement will be credited against the appellant's adjudged sentence. Accordingly, the findings and sentence are

AFFIRMED.